# Anthony A. Yarborough

## v.

# Commonwealth of Virginia

Record No. 930513

February 25, 1994

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Hassell, JJ., and Poff, Senior Justice

216

*Blake K. Woloson,* for appellant.

*Margaret Ann B. Walker, Assistant Attorney General (Stephen D. Rosenthal, Attorney General,* on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

The sole issue in this appeal is whether the evidence is sufficient to support a conviction of the use of a firearm in the commission of a felony.

Anthony A. Yarborough was indicted in the Circuit Court of Arlington County for the robbery of Susan Konchal and for using or attempting to use or displaying in a threatening manner a pistol or other firearm while committing or attempting to commit robbery, in violation of Code § 18.2-53.1. A jury found Yarborough guilty of both offenses and fixed his punishment at five years in the penitentiary for robbery and two years in the penitentiary for use of a firearm. The trial court sentenced Yarborough in accordance with the jury verdicts.

On January 26, 1993, the Court of Appeals affirmed both convictions. *Yarborough* v. *Commonwealth,* 15 Va. App. 638, 426 S.E.2d 131 (1993). We awarded Yarborough an appeal limited to the question whether the evidence is sufficient to support the firearm conviction.

The evidence germane to the firearm charge may be summarized briefly and, according to established appellate principles, must be stated in the light most favorable to the Commonwealth, the prevailing party at trial. On November 13, 1990, at 7:47 p.m., Konchal withdrew $60 from an automatic teller machine located in the lobby of the building in which she worked. She then began to walk the three blocks to her condominium.

As Konchal approached the driveway of the condominium complex, Yarborough ran past her. Shortly thereafter, Yarborough reappeared and ran directly toward her. As Yarborough approached Konchal, he said, "This is a stickup[;] give me all your money."

Konchal said, "What?" and tried to walk past him. Yarborough, however, blocked Konchal and said, "No, this is a stickup[;] give me all your money."

According to Konchal, when Yarborough moved toward her, "[b]oth [of Yarborough's] hands were in his pockets." She saw "something protruding . . . from his right hand pocket of his jacket," and she "thought [there] was a gun in his pocket." Konchal then opened her purse, reached in, and handed Yarborough three twenty dollar bills from her wallet. Yarborough, using his left hand, reached into Konchal's purse and took two one dollar bills. Yarborough then fled in the direction of a nearby subway (or Metro) station, and Konchal immediately reported the robbery to the police.

About 8 p.m., a police officer, dispatched to investigate the robbery, entered the main area of the nearest Metro station and immediately saw and stopped a man who matched Konchal's description of her assailant. The man was Yarborough. The officer performed a "pat-down" of Yarborough for weapons; however, no weapons were found. The officer did find a chilled, unopened can of beer in one of the pockets of Yarborough's jacket.

Yarborough was immediately taken into custody by the police, and officers searched the Metro station and surrounding area, the scene of the robbery and surrounding area, and various nearby streets for a weapon. No weapon was found.

■ Yarborough was indicted for and convicted of violating Code § 18.2-53.1. Code § 18.2-53.1 provides, in pertinent part, as follows:

> It shall be unlawful for any person to use or attempt to use any pistol . . . or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . robbery. . . . Violation of this section shall constitute a separate and distinct felony. . . .

The Attorney General contends that "the law does not require that a firearm actually be seen or even used in order to sustain a conviction under § 18.2-53.1" and that the evidence is sufficient to support a conviction "if the victim is made *to feel* that an assailant has a firearm, and reacts in response to that perception." Consistent with that contention, the Court of Appeals stated that "actual sighting of the weapon is unnecessary for a conviction under Code § 18.2-53.1." *Yarborough,* 15 Va. App. at 642, 426 S.E.2d at 133-34. Continuing, the Court of Appeals noted that, although Konchal saw no gun, she saw what she believed was a gun and that Yarborough "may have had

a gun in his right pocket at the time of the offense." *Id.,* 426 S.E.2d at 134.

 We have decided two cases dealing with the sufficiency of the evidence to support a conviction under Code § 18.2-53.1. In *Cox* v. *Commonwealth,* 218 Va. 689, 690-91, 240 S.E.2d 524, 525 (1978), we held that a pistol, which was capable of firing live ammunition but which was loaded with wooden bullets, was "a weapon whose use was specifically proscribed by [Code § 18.2-53.1]." In *Holloman* v. *Commonwealth,* 221 Va. 196, 197, 269 S.E.2d 356, 357 (1980), the sole issue was whether the instrument in the defendant's possession was a "firearm" within the meaning of Code § 18.2-53.1. Although the instrument "appear[ed] in size, weight and shape to be a .45 caliber automatic pistol," it fired BBs "by the force of a spring, not by gunpowder." *Id.* We held that the evidence was sufficient to convict the defendant of using a firearm in violation of Code § 18.2-53.1, even though the instrument was fired by a spring rather than by gunpowder. *Id.* at 199, 269 S.E.2d at 358.

 These cases do not stand for the proposition that the Commonwealth need not prove that the defendant actually possessed a firearm. Indeed, they stand for the contrary proposition, and we reject the Attorney General's contention and the conclusion reached by the Court of Appeals.

 Code § 18.2-53.1, a penal statute, must be strictly construed against the Commonwealth and in favor of an accused. *Martin* v. *Commonwealth,* 224 Va. 298, 300, 295 S.E.2d 890, 892 (1982). When so construed, we think that, to convict an accused of violating Code § 18.2-53.1, the Commonwealth must prove that the accused actually had a firearm in his possession and that he used or attempted to use the firearm or displayed the firearm in a threatening manner while committing or attempting to commit robbery or one of the other specified felonies.[1] In order to convict an accused of a crime, the evidence must establish the accused's guilt beyond a reasonable doubt and exclude every reasonable hypothesis of innocence. *Cameron* v. *Commonwealth,* 211 Va. 108, 110, 175 S.E.2d 275, 276 (1970). Conviction of a crime is not justified if the evidence creates only a suspicion or probability of guilt. *Id.*

 In the present case, evidence that Yarborough "may have had" a firearm in his possession creates merely a suspicion of guilt.

---

[1] The dissent advances a proposition not argued by the Attorney General. Even so, the instruction that became the law of the case does not alter the fact that the Commonwealth had the burden of proving beyond a reasonable doubt that Yarborough *actually possessed* a firearm.

Possession of a firearm is an essential element of the statutory offense, and the fact that Konchal merely thought or perceived that Yarborough was armed is insufficient to prove that he actually possessed a firearm.[2] Clearly, the evidence does not establish guilt beyond a reasonable doubt and exclude every reasonable hypothesis of innocence. Therefore, it is insufficient, as a matter of law, to support the firearm conviction.

Accordingly, we will reverse the Court of Appeals' judgment in part and dismiss the firearm indictment.

*Reversed in part and dismissed.*

SENIOR JUSTICE POFF, with whom JUSTICE WHITING and JUSTICE LACY join, dissenting.

Underlying the majority's decision to reverse this firearm conviction is the holding that "[p]ossession of a firearm is an essential element of the statutory offense, and the fact that Konchal merely thought or perceived that Yarborough was armed is insufficient to prove that he actually possessed a firearm." Because I need not, I do not defend or challenge that holding. Nevertheless, I dissent from the decision to reverse.

The record reflects the following colloquy between the trial court and counsel out of the presence of the jury:

THE COURT: Let me see your instructions.

MS. NORMAN [Attorney for the Commonwealth]: Your Honor, these were all agreed upon.

THE COURT: All right. Do you agree, Counsel?

MR. WOOLSON [Defense Counsel]: Yes. We have already been through them.

The transcript of the proceedings shows that the trial court read the instructions approved by counsel to the jury, including the following:

A firearm is any object which gives the appearance of having a capability of firing a projectile. It is not necessary that the object actually has the capability of firing a projectile. A firearm

---

[2] With respect to the crime of robbery, however, a victim's perception that the assailant was armed is sufficient to establish the necessary element of violence or intimidation. *Johnson* v. *Commonwealth,* 209 Va. 291, 296, 163 S.E.2d 570, 574 (1968).

does not actually have to be seen by the victim to sustain a conviction of displaying a firearm and committing robbery.

Display includes not only exhibited to the sight but also that which is manifested to any of the victim's senses, causing the victim to believe a firearm is present.

The Commonwealth's Attorney, acknowledging in closing argument that the investigating officers were unable to find a firearm, reminded the jury that Konchal "believed that this man, that this defendant had a gun" and that "she was honest enough to tell the dispatchers, 'I didn't see it. I thought he had a gun.' " The transcript reveals no objection to that argument.

The instructions as drafted, as counsel agreed, and as invoked by the Commonwealth's Attorney in argument, became the law of the case. Where "two instructions were read to the jury which imposed an inappropriate standard . . . . [w]ithout objection, these instructions became the law of this case." *Owens-Corning Fiberglas Ins. Corp. v. Watson,* 243 Va. 128, 136, 413 S.E.2d 630, 635 (1992). "It is well settled that instructions given without objection become the law of the case and thereby bind the parties in the trial court and this Court on review." *Owens-Illinois v. Thomas Baker Real Estate,* 237 Va. 649, 652, 379 S.E.2d 344, 346 (1989). "The instruction, given without objection, was the law of the case . . . and we will analyze the case on appeal as it was tried below." *Medical Center Hospital v. Sharpless,* 229 Va. 496, 498, 331 S.E.2d 405, 406 (1985). *See also Oden v. Salch,* 237 Va. 525, 533, 379 S.E.2d 346, 351 (1989); *Commonwealth v. Millsaps,* 232 Va. 502, 509, 352 S.E.2d 311, 315 (1987); *Norfolk & Portsmouth Railroad v. Barker,* 221 Va. 924, 929, 275 S.E.2d 613, 616 (1981); *Preston v. Land,* 220 Va. 118, 120, 255 S.E.2d 509, 510 (1979); *Bostic v. Whited,* 198 Va. 237, 239, 93 S.E.2d 334, 335 (1956).

In effect, the majority rejects the contemporaneous objection rule, Rule 5:25, and applies the "ends of justice" exception to that rule. *See Jimenez v. Commonwealth,* 241 Va. 244, 402 S.E.2d 678 (1991). In my view, the majority does not attain the ends of justice by ignoring the fact, conclusively established by the evidence, that Yarborough accomplished an act of robbery, an offense against the person, by word and deed deliberately designed to convince his victim that he possessed a firearm and was prepared to use it. Indeed, as this Court observed in *Jimenez,* "application of the rules tends to promote, not hinder, the administration of justice." *Id.* at 249, 402 S.E.2d at 680.

Application of Rule 5:25 is an application of the doctrine of waiver. We have repeatedly enforced that waiver in civil and criminal appeals, including numerous reviews of capital penalties. In *Bunch v. Commonwealth,* 225 Va. 423, 436, 304 S.E.2d 271, 278 (1983), a capital murder case, we applied the rule to a constitutional challenge (search and seizure) raised for the first time on appeal; *accord Waye v. Commonwealth,* 219 Va. 683, 690 n.1, 251 S.E.2d 202, 207 n.1 (1979) (equal-protection challenge). And the United States Supreme Court has held that three state prisoners who had failed to comply with a state rule "mandating contemporaneous objections to jury instructions, may not challenge the constitutionality of those instructions in a federal habeas proceeding." *Engle v. Isaac,* 456 U.S. 107, 110 (1982).

Rule 5:25 is designed "to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials." *Fisher v. Commonwealth,* 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988) *cert. denied,* 490 U.S. 1028 (1989). The instructions the trial judge read to this jury were fully consistent with contemporary precedent. Failure to apply Rule 5:25 in our analysis of this appeal defeats its purpose, dilutes the doctrine of waiver, overrules the law of the case, and hinders the orderly administration of justice.

In summary, the defendant failed to object to the instruction, failed to object to the Commonwealth's argument to the jury based upon the instruction, and failed to assign error to the instruction on appeal. Accordingly, I would apply Rule 5:25 and the law of this case and affirm the judgment of the trial court and that of the Virginia Court of Appeals.