COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Bumgardner and Frank
Argued at Richmond, Virginia


ROSA ROBINSON COLEMAN

MEMORANDUM OPINION[*] BY
v.      Record No. 1488-04-2          JUDGE ROBERT P. FRANK
                                                OCTOBER 4, 2005

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Pamela S. Baskervill, Judge.

Julia H. Sichol, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Michael T. Judge, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


Rosa Robinson Coleman, appellant, was convicted by a jury of attempted murder, in

violation of Code §§ 18.2-26 and 18.2-32, malicious wounding, in violation of Code § 18.2-51,

use of a firearm in the commission of attempted murder, in violation of Code § 18.2-53.1, and

use of a firearm in the commission of malicious wounding, in violation of Code § 18.2-53.1.  On

appeal, she does not challenge the attempted murder or malicious wounding convictions.  She

argues instead that the evidence is insufficient to sustain two firearm convictions.  For the

reasons stated, we disagree and affirm the trial court.

BACKGROUND

On June 9, 2003, Tyrone Harrison was living with appellant, his girlfriend.  At

approximately 4:00 a.m., as Harrison slept in bed, appellant entered the bedroom and asked

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Harrison a question. Harrison left the bedroom and as he entered the living room, appellant shot Harrison with a 9-mm pistol in the stomach, in his right arm, and once in each hip.

Harrison then retreated to the bedroom, where he laid on the floor and asked appellant to call 911. Appellant ignored his plea. As Harrison tried to crawl back into the living room, appellant grabbed a hammer and hit Harrison two times on the back of his head. Harrison was still in the bedroom when this second attack occurred.

At trial, when the Commonwealth's attorney asked Harrison what happened next, Harrison responded, "I got quiet, I didn't say anything else, and I seen [sic] that's when [appellant] had put the gun down."

Appellant returned from the kitchen with a mop and bucket and started cleaning up the blood in the living room while Harrison was still on the floor in the bedroom. As she mopped, appellant would occasionally throw "bleachy water" on Harrison's abdominal wounds. Appellant told Harrison she knew he was "having an affair on her." Harrison then gathered enough strength to get the gun from the table in the living room, ran to the front door of the apartment, and stumbled into the hallway. He fell in the doorway leading into the apartment complex and remained there until police found him approximately two hours later.

A jury convicted appellant of attempted murder, malicious wounding, and two counts of using a firearm in the commission of a felony.[1]

---

[1] The trial court made no determination as to which act gave rise to which conviction. The indictments do not specify any factual basis for the charges. The instructions for attempted murder, malicious wounding, and use of a firearm do not narrow the scope of the charges to determine whether the firearm or the hammer was the instrumental of the offense. Both parties agreed at trial that the shooting and the hammer attack could each support either the attempted murder charge or the malicious wounding charge.

ANALYSIS

Appellant contends that the evidence was insufficient, as a matter of law, to sustain two convictions of using a firearm in the commission of a felony.[2] She argues the firearm was used in either the attempted murder, or the malicious wounding, but not both.[3] She contends that she did not use or display a firearm when she hit Harrison with the hammer and, therefore, she should not have been convicted of using a firearm in the commission of the felony attributed to the hammer attack. We disagree.

The Commonwealth argues on appeal that the act of shooting could give rise to both the attempted murder charge and the malicious wounding charge.[4] The Commonwealth contends that because appellant shot Harrison multiple times, the jury could reasonably infer that her intent changed from malicious wounding to murder while in the act of shooting.[5]

The Commonwealth also argues that even if the hammer attack gave rise to the attempted murder or malicious wounding charge, the firearm was readily accessible to appellant while she

---

[2] Code § 18.2-53.1 states in part:

> It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit murder, rape, forcible sodomy, inanimate or animate object sexual penetration as defined in § 18.2-67.2, robbery, carjacking, burglary, malicious wounding as defined in § 18.2-51, malicious bodily injury to a law-enforcement officer as defined in § 18.2-51.1, aggravated malicious wounding as defined in § 18.2-51.2, malicious wounding by mob as defined in § 18.2-41, or abduction.

[3] At trial, appellant concluded that the Commonwealth's evidence suggests the attempted murder occurred when the shots were fired, and the malicious wounding occurred when appellant used the hammer on Harrison. On appeal, however, she concedes that either incident could fit the criterion for malicious wounding or attempted murder.

[4] We need not address this argument because we affirm on other grounds.

[5] Appellant did not address this argument. She did not file a reply brief pursuant to Rule 5A:22.

- 3 -

attacked Harrison with the hammer. The jury could reasonably infer that Harrison did not resist the attack out of fear of the firearm, and therefore, the second firearm conviction is appropriate.

When reviewing the sufficiency of evidence on appeal, "we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). We also review the jury's decision "to see if reasonable jurors could have made the choices that the jury did make. We let the decision stand unless we conclude no rational juror could have reached that decision." Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en banc*), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003). This deference applies not only to the facts set forth at trial, but to the inferences reasonably drawn from those facts. See Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991) ("The inferences to be drawn from proven facts, so long as they are reasonable, are within the province of the trier of fact."). Therefore, if it is reasonable for the jury to infer that appellant used or displayed a firearm while she hit Harrison with the hammer, then we have a duty to uphold both firearm convictions. McCain v. Commonwealth, 261 Va. 483, 492, 545 S.E.2d 541, 547 (2001).

Appellant bases her argument on Yarborough v. Commonwealth, 247 Va. 215, 441 S.E.2d 342 (1994). There, the Supreme Court of Virginia noted that, "'Code § 18.2-53.1, a penal statute, must be strictly construed against the Commonwealth and in favor of an accused.'" Id. at 218, 441 S.E.2d at 344 (quoting Martin v. Commonwealth, 224 Va. 298, 300, 295 S.E.2d 890, 892 (1982)). The Court stated:

> When so construed, we think that, to convict an accused of
> violating Code § 18.2-53.1, the Commonwealth must prove that
> the accused actually had a firearm in [her] possession and that
> [she] used or attempted to use the firearm or displayed the firearm
> in a threatening manner while committing or attempting to commit
> [the underlying felony].

Id. (alterations not in original). While we agree with appellant's interpretation of Yarborough, we disagree with appellant's application of Yarborough to the facts of this case. In accordance with Yarborough, we find that the jury could reasonably infer that appellant (1) actually had a firearm in her possession, and (2) that she displayed the firearm in a threatening manner at the time she hit Harrison on the head with the hammer.

Based upon Harrison's testimony and the inferences drawn therefrom, the jury could reasonably conclude that appellant had a firearm in her possession when she hit Harrison with the hammer. As noted above, the record states that appellant shot Harrison four times with a 9-mm pistol. At that point, appellant had a firearm in her possession. The record then reveals that appellant attacked Harrison with the hammer. In his testimony, Harrison describes this hammer attack and is then asked, "[w]hat happened next?" Harrison responds, "I got quiet. I didn't say anything else, and I seen [sic] that's when [appellant] had put the gun down." Nothing in the record indicates that appellant put the gun down before she hit Harrison with the hammer. From this, the jury could conclude that appellant was still in possession of the gun when she hit Harrison with the hammer and that at some point thereafter she placed the gun on the living room table.

The jury could also conclude that by having the firearm in her possession, appellant displayed the firearm in a threatening manner during the hammer attack.[6] An assailant can display a firearm in a threatening manner even though the firearm is not "drawn and presented." Cromite v. Commonwealth, 3 Va. App. 64, 66, 348 S.E.2d 38, 39 (1986). "The apprehension

---

[6] In her oral argument before this Court, appellant argued the firearm instructions given to the jury only mentioned the "use" of, but not "display" of, a firearm. Acknowledging she is not challenging the propriety of the instruction, she nevertheless argues that the jury could have only considered the use of a firearm, not the display of a firearm during the hammer attack. Yet, the record reflects the Commonwealth, in its closing argument to the jury, argued appellant used and displayed the firearm. Thus, the issue of whether appellant displayed the firearm was before the jury.

that the person attempting a [felony] has in [her] possession a deadly weapon, and the fear that [she] might use the same, is just as effective to place one in fear as if the weapon is drawn and presented." Id. at 66, 348 S.E.2d at 39 (alterations not in original); see also Breeden v. Commonwealth, 43 Va. App. 169, 181, 596 S.E.2d 563, 569 (2004) (holding that the trial court could properly conclude that an assailant who placed a firearm on a shelf while he raped the injured party was in possession of the firearm and displayed it in a threatening manner).

Harrison knew that appellant at one point had a firearm in her possession. He also knew that her threat to use the firearm was real. The evidence showed that while wounded, Harrison attempted to gain control of the firearm while staggering into the living room. Although the record does not indicate appellant "presented" the pistol in a threatening manner, the jury could properly conclude that appellant's mere possession of the pistol during the hammer attack, coupled with the fact she had already used the pistol, could create a legitimate fear of further use and constitutes display of a firearm in a threatening manner.

Appellant argues the firearm was in the living room when she hit Harrison with the hammer in the bedroom and, therefore, she did not display the firearm in a threatening manner. We do not agree that the record requires such a finding. As noted above, Harrison's testimony supports the inference that appellant could have possessed the firearm while she hit Harrison with the hammer.

As a result, we cannot say that the jury's verdict was plainly wrong or without evidence to support it. We therefore find the evidence sufficient to support the conclusion that appellant used a firearm, in violation of Code § 18.2-53.1, when she committed the felony attributed to the attack with the hammer.

Affirmed.