COURT OF APPEALS OF VIRGINIA

Present:    Judges Petty, Huff[*] and Chafin
Argued by teleconference

KIMBERLY PAUL BARNEY

                                                    OPINION BY
v.        Record No. 1694-17-1               JUDGE WILLIAM G. PETTY
                                                    JANUARY 8, 2019
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Bonnie L. Jones, Judge

Anthony J. Balady, Jr., Assistant Public Defender, for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


        A jury found Kimberly Barney guilty of two counts of use of a firearm in the commission

of a felony.[1]  On appeal, Barney asserts that the trial court erred in refusing her proffered

instruction regarding the definition of a firearm and in giving instead the instruction provided by

the Commonwealth.  She also asserts that the evidence of her use of a firearm was insufficient to

support the convictions.[2]  We agree that the jury was improperly instructed and reverse the

convictions.  However, we conclude that the evidence was sufficient for conviction, and thus we

remand for a new trial.

---

        [*] On January 1, 2019, Judge Decker succeeded Judge Huff as chief judge.

        [1] Barney pleaded guilty to the underlying two counts of robbery; those convictions are
not before this Court on appeal.

        [2] Barney also assigned error to the trial court's refusal to allow defense counsel to argue
that Barney did not use a firearm in commission of the robbery.  Because we reverse on the jury
instruction issue, we need not address this argument.  We are confident the trial court would not
have so limited defense counsel's argument had the jury been properly instructed.

## I. BACKGROUND

This Court "review[s] the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court." Dawson v. Commonwealth, 63 Va. App. 429, 431 (2014).[3] Barney robbed clerks at two Walgreens stores, one on Christmas Day and one on the day after. In the first robbery, Barney brought a piece of merchandise to the counter with a note on top of the item. The note said that the clerk should "give her the money and to put the money in a bag and to stay calm and not to make a sound if [she] wanted to live." Although the clerk did not immediately notice the note, when she saw it she believed it was a shopping list and pushed it aside. She testified that Barney made a "motion, like, she had a weapon in her pocket." Barney told the clerk to give her the money. The clerk recounted she "saw an imprint of what appeared to be a gun barrel or what a gun barrel will make if it was being poked through an article of clothing." Barney was making a "poking motion of what [the clerk] thought was going to be a weapon in her pocket," and Barney's hand never left her pocket. After the clerk noticed the note and gave Barney the money from the cash register, Barney took the money and left. The clerk testified that she believed, "by the note saying for [her] to not make a sound if [she] wanted to live," that Barney "had a weapon and planned to do bodily harm." The incident was captured on surveillance video.

The following day, Barney robbed a clerk at a second, different Walgreens store. Shaking and on the phone, Barney began purchasing an item with cash. When the clerk opened the cash drawer to make change for Barney, Barney leaned over and told the clerk to give her all

---

[3] We recognize that when considering whether a jury instruction is supported by the evidence we review the facts in a light most favorable to the proponent of the instruction. Commonwealth v. Vaughn, 263 Va. 31, 33 (2002). Here, however, the question is not whether the instruction was supported by the evidence, but rather whether the instruction properly set out the elements of the offense. As such, it is purely a legal question that we review *de novo*. Therefore, we set out the facts of the offense only for purposes of addressing the sufficiency argument.

the money in the drawer, "now." As the clerk was getting the money from the drawer, Barney told the clerk that "she had two guns facing" the clerk, and "if [the clerk] went any slower that she was going to shoot [her]." The clerk never saw a gun, but Barney "had her hand in her pocket . . . pointing toward [the clerk]." Barney took the money with her other hand and left. Like the previous robbery, the incident was captured on surveillance video.

Ten minutes after the second robbery, police found Barney sitting in a parked car. Police did not find any weapons on Barney's person or in her car. When questioned by detectives after she was taken into custody, Barney admitted she led the clerks to believe she had a gun in order to effectuate the robberies, but said that she did not in fact use a firearm. Barney also testified in her own defense at trial. She admitted that she committed the robberies, but denied that she ever had a gun.

The two offenses were tried together before a jury. The Commonwealth offered Jury Instruction 1. That instruction stated, "Where a victim reasonably perceived a threat or intimidation by a firearm, it is not necessary that the object in question was in fact a firearm."[4] Barney's counsel objected to that instruction and argued that the trial court should instead give Virginia Model Jury Instruction 18.702, entitled "Definition of firearm—Use of Firearm in Felony" which states as follows:

> A firearm is any instrument that is capable of expelling a projectile by force or gun powder. A firearm is also an object that is not capable of expelling a projectile by force or gun powder but gives the appearance of being able to do so. The [existence] of a firearm may be proved by circumstantial evidence, direct evidence or both.

---

[4] This instruction is Virginia Model Jury Instruction 18.70, entitled "Definition of Firearm—Used for Purposes of Intimidation." The commentary for the instruction notes that "[i]n crimes such as robbery, the victim's perception that the assailant is armed is sufficient to establish the necessary element of violence or intimidation."

When the trial court rejected that instruction, Barney's counsel offered an alternative instruction.[5] That, too, was rejected. Instead the trial court gave the Commonwealth's Jury Instruction 1.[6]

In response to the trial court's ruling on the jury instructions, Barney's counsel requested he be able to argue to the jury that it could find Barney not guilty if it believed that she did not actually have "a gun or any instrument that looked like a gun under that model instruction." The trial court responded, "If you tell the jury that then I'm going to declare a mistrial." The Commonwealth's instructions were given, and the jury found Barney guilty of both firearm charges and fixed a sentence of three years on one charge and five years on the other. The trial court imposed the jury's sentence.

## II. ANALYSIS

Barney asserts that the trial court erred in refusing proffered Model Jury Instruction 18.702 and giving the instruction proffered by the Commonwealth instead.

---

[5] The instruction noted,

> [A] firearm is a weapon designed to expel [a] projectile by explosion of gun powder, by spring mechanism or by traumatic pressure. It is not necessary that the object actually have the capacity of firing a projectile provided that it retains enough of its parts that it has not lost it's [sic] appearance as a firearm.

[6] The Court also instructed the jury that the following comprised the elements the Commonwealth must prove to convict of the crime:

(1) That the defendant displayed in a threatening manner, used, attempted to use a pistol or firearm; and

(2) That the display, use or attempted use was while committing a robbery.

- 4 -

A. Standard of Review

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503 (1982)).  The trial court has "broad discretion in giving or denying instructions requested," and we review those decisions under an abuse of discretion standard.  Gaines v. Commonwealth, 39 Va. App. 562, 568 (2003) (*en banc*) (quoting John L. Costello, Virginia Criminal Law and Procedure § 60.6-8, 810 (2d ed. 1995)).  However, whether a proffered jury instruction accurately states the law is reviewed *de novo*.  Sarafin v. Commonwealth, 288 Va. 320, 325 (2014).  Furthermore, a trial court abuses its discretion by failing to properly instruct the jury on the elements of an offense.  Id.; see also Broady v. Commonwealth, 16 Va. App. 281, 291 (1993).

B. Historical Background of What Constitutes a "Firearm"

Code § 18.2-53.1 provides, in pertinent part, "It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit . . . robbery[.]"  "Firearm" is not defined in the statute.  However, the Supreme Court has addressed the issue on a number of occasions.  A review of those cases illustrates that while the Court's path of analysis has not necessarily been direct, ultimately, the conclusion is clear; what controls is the objective fact that the instrument used was either an actual firearm or an object that gives the appearance of a firearm and not the victim's subjective perception that it might have been a firearm.

The Supreme Court first addressed the issue in Holloman v. Commonwealth, 221 Va. 196 (1980), a case involving a BB gun that had the appearance of a .45 caliber automatic pistol.  The Court noted that in a prosecution for robbery, "a sensible victim of a holdup 'acts on

appearances' and 'is not required to know whether the gun pointed at him is loaded or whether it shoots bullets or blanks.'" Id. at 198 (quoting Johnson v. Commonwealth, 209 Va. 291, 296 (1968)). Drawing an analogy to robbery, the Court affirmed the conviction concluding that under Code § 18.2-53.1, a conviction was warranted "upon proof that the defendant employed an instrument which gave the appearance of having a firing capability, whether or not the object actually had the capacity to propel a bullet by the force of gunpowder." Id. at 199.

The strength of the analogy upon which the holding of Holloman was based was, however, undermined somewhat by the Court in its next discussion of the issue. In Yarborough v. Commonwealth, 247 Va. 215 (1994), the Court concluded that an object in a pocket that was never seen, and which later turned out to be a beer can, was insufficient to support a conviction under Code § 18.2-53.1. Id. at 219. Commenting on both Cox v. Commonwealth, 218 Va. 689 (1978),[7] and Holloman, the Court noted that "[t]hese cases do not stand for the proposition that the Commonwealth need not prove that the defendant actually possessed a firearm. Indeed, they stand for the contrary proposition . . . ." Yarborough, 247 Va. at 218. The Court concluded that "to convict an accused of violating [Code] § 18.2-53.1, the Commonwealth must prove that the accused actually had a firearm in his possession . . . ." Id. "[T]he fact that [the victim] merely thought or perceived that Yarborough was armed [wa]s insufficient to prove that he actually possessed a firearm." Id. at 219. In a footnote, the Court recognized that this was a different burden of proof than that applied to robbery where a victim's perception was sufficient evidence of the necessary element of violence or intimidation. Id. at 219 n.1. See also Byers v. Commonwealth, 23 Va. App. 146, 150 (1996) (holding that "[p]ossession of a firearm is an essential element [under Code § 18.2-53.1], and the fact that a victim merely thinks or perceives

_____

[7] In a per curiam opinion the Court in Cox summarily concluded that a real pistol loaded with wooden bullets was sufficient to sustain a conviction under Code § 18.2-53.1. Cox, 218 Va. at 690-92.

- 6 -

that the accused was armed is insufficient to prove actual possession"); Sprouse v. Commonwealth, 19 Va. App. 548, 551-52 (1995) (while intimidation to accomplish rape or robbery may be established by the victim's perception that the object was a firearm, a conviction under Code § 18.2-53.1 requires proof that the object was, in fact, a firearm).

In Powell v. Commonwealth, 268 Va. 233 (2004), the Court reaffirmed its holding in Yarborough that a conviction under Code § 18.2-53.1 requires proof that "the accused actually had a firearm in his possession and that he used or attempted to use the firearm or displayed the firearm in a threatening manner while committing [a named felony]." Id. at 236 (quoting Yarborough, 247 Va. at 218). The Court then addressed the sufficiency of the evidence necessary to prove that element. Id. at 236-37. While the victims never saw a gun and no gun was ever recovered, the Court concluded that Powell's statements that he had a pistol in his pocket and that nobody would get hurt if they didn't move, coupled with his nervous and fidgety manner, all the while with his hand in his pocket, constituted sufficient proof that he actually used a firearm in committing the robbery. Id. at 237. See also McBride v. Commonwealth, 24 Va. App. 603, 607 (1997) (recognizing that "circumstantial evidence, such as an assailant's statement that he possesses a firearm, can be sufficient evidence to prove beyond a reasonable doubt that an accused indeed possessed a firearm").

Seven years after Powell, the Court once again dealt with the definition of a firearm under Code § 18.2-53.1, in Startin v. Commonwealth, 281 Va. 374 (2011). There, the Court was confronted with a "John Wayne Replica" .45 caliber handgun that, while a replica and lacking a firing pin, "[i]n its outward appearance, including size, weight and shape it appears to be an

operational firearm designed to expel .45 caliber ammunition by explosion." Id. at 377.[8] Returning to the robbery analogy the Court concluded that the term firearm under Code § 18.2-53.1 "warrants a 'broad construction' and includes any instrument that 'gives the *appearance* of being a firearm.'" Id. at 382 (quoting Armstrong v. Commonwealth, 263 Va. 573, 582-83 (2002)). Notably, however, the Court reaffirmed that "the term 'firearm' includes any instrument that is capable of expelling a projectile by force of gunpowder [and] also includes other objects that are not capable of firing projectiles but give the appearance of being able to do so." Id. (quoting Startin v. Commonwealth, 56 Va. App. 26, 38-39 (2010) (*en banc*)).

Finally, in two subsequent cases, the Court reaffirmed its holding in Powell regarding the sufficiency of evidence required to prove that an object was a firearm. In Courtney v. Commonwealth, 281 Va. 363, 368 (2011), the Court concluded that the defendant's statement that "I have a gun, get back in the car" and that he would have to kill the victim or shoot her if she did not, was sufficient for the trier of fact to conclude that he had an actual gun despite the fact that he was later found with a toy gun. Then, in Jordan v. Commonwealth, 286 Va. 153, 158-59 (2013), the Court, in a case involving a prosecution for felon in possession of a firearm, direct testimony describing the weapon coupled with the defendant's conduct in pointing the weapon at the victim's head was sufficient to allow the trier of fact to conclude that the object was an instrument designed, made, and intended to fire or expel a projectile by means of an explosion, and was thus an actual firearm. Importantly, neither of these cases diminished the holdings of Yarborough and Startin that proof of an actual or replica firearm was required.

---

[8] The actual weapon was a replica of the standard government issue sidearm of the U.S. soldier from 1911 until 1986. The metal model was a realistic non-firing replica pistol and was engraved with "JOHN WAYNE, Armed Forces Commemorative" and "45 GOVERNMENT AUTOMATIC" to honor legendary John Wayne war movies such as The Sands of Iwo Jima, The Green Berets and Operation Pacific. JOHN WAYNE AN AMERICAN LEGEND, https://www.johnwayneplates.info/45_auto.html (last visited Jan. 4, 2019).

From these cases we conclude that to obtain a conviction for violating Code § 18.2-53.1 the Commonwealth must prove either (1) the defendant possessed an actual firearm; that is, an instrument designed, made, and intended to expel a projectile by means of an explosion, regardless of operability, Yarborough, 247 Va. at 218; or (2) that the defendant possessed an object that was not an actual firearm but that gave the appearance of being one, Startin, 281 Va. 374. Finally, the Commonwealth may prove either (1) or (2) by direct evidence, circumstantial evidence, or both. Thomas v. Commonwealth, 25 Va. App. 681, 686 (1997); McBride, 24 Va. App. at 607.

## C. Jury Instruction

Here, the instructions given to the jury did *not* require the Commonwealth to prove that Barney possessed either an actual firearm or an object that gave the appearance of an actual firearm. Instead, the trial court instructed the jury that "[w]here a victim reasonably perceived a threat or intimidation by a firearm, it is not necessary that the object in question was in fact a firearm." As noted above, "Possession of a firearm is an essential element of the statutory offense." Yarborough, 247 Va. at 219. Accordingly, "to convict an accused of violating Code § 18.2-53.1, the Commonwealth must prove that the accused *actually had a firearm [or replica firearm] in his possession*." Id. at 218 (emphasis added). Therefore, the trial court erred in instructing the jury that it was not necessary that the object was in fact an actual or replica firearm so long as the victim perceived a threat or intimidation by a firearm.

## D. Sufficiency of the Evidence

Although we reverse Barney's convictions on the failure of the trial court to properly instruct the jury,

> we address [her] sufficiency argument in order to ensure that a
> retrial on remand will not violate double jeopardy principles: "If
> the evidence adduced at trial was insufficient to convict [Barney],
> [she] is entitled to an acquittal; if [she] is so entitled, a remand for

- 9 -

> retrial would violate the Constitution's prohibition against double jeopardy."

Wilder v. Commonwealth, 55 Va. App. 579, 594 (2010) (quoting Parsons v. Commonwealth, 32 Va. App. 576, 581 (2000)).

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330 (2004), "[w]e must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663 (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)). "The judgment of the trial court shall not be set aside unless it appears from the evidence that said judgment is plainly wrong or without evidence to support it." Bright v. Commonwealth, 4 Va. App. 248, 250-51 (1987); see also Code § 8.01-680.

The Supreme Court's decision in Powell v. Commonwealth, 268 Va. 233, is controlling in this case. There, as noted above, the Court affirmed Powell's conviction for use of a firearm in the commission of a felony despite the fact that no firearm was actually seen or recovered. Id. at 237. The evidence at trial was that Powell told the two employees at a store register that he had a pistol in his pocket and ordered them to give him the money in the register. Id. at 235. All the while, Powell kept his hand in his pocket and was "[m]oving back and forth in a nervous, fidgety manner." Id. Powell told the employees "not to move 'and won't nobody get hurt.'" Id. Police apprehended Powell soon after, but no firearm was ever recovered and "[n]either the victims nor any other witness testified to seeing Powell with a gun or disposing of a gun." Id. at 237. The Court affirmed noting that "evidence that no gun was found conflicts with Powell's

- 10 -

statements and actions during the commission of the offenses. The trier of fact resolved this conflict against Powell, and in doing so, necessarily concluded that Powell had a gun." Id.

Here, like in Powell, a rational trier of fact could have resolved the conflict in the evidence against Barney. The evidence demonstrated that in both robberies, Barney made statements and gestures to imply that she had a firearm. While Powell kept his hand in his pocket and told the clerk not to move "and won't nobody get hurt;" Barney gave the clerk at the first robbery a note that said the clerk should give Barney the money "and not make a sound if [she] wanted to live." At the second robbery, Barney actually told the clerk she had "two guns" facing her, and "if [the clerk] went any slower that [Barney] was going to shoot [her]." In fact, Barney made a poking motion with something in her pocket as if "she had a weapon in [it]" and kept her hand in her pocket. Accordingly, Barney's "out-of-court statement admitted the existence of a 'gun.'" Elmore v. Commonwealth, 22 Va. App. 424, 429-30 (1996) (affirming conviction where Elmore told the victim bank teller to give him all the money, that he did not want to hurt anyone, and then pointed to his jacket). "The only evidence that refutes [Barney's] admission that [s]he possessed a firearm is [her] general denial." Id. at 430.

Additionally, the firearm offenses were tried together. The jury was therefore free to infer that because Barney said she had a gun in the second robbery, she used one at the first robbery. Accordingly, like in Powell, a rational trier of fact could have found the essential elements of both crimes beyond a reasonable doubt considering Barney's threats coupled with the pointing motions she was making in her jacket pocket. Although, like in Powell, no firearm or facsimile of a firearm was ever seen or recovered, a rational trier of fact could have resolved the conflict in the evidence against Barney. Because the evidence adduced at trial was sufficient to convict Barney, a remand for retrial does not violate the Constitution's prohibition against double jeopardy. See Wilder, 55 Va. App. at 594.

- 11 -

## III.  CONCLUSION

The trial court erred in failing to properly instruct the jury as to the definition of a

firearm.  Therefore, the decision of the trial court is reversed and remanded for a new trial if the

Commonwealth is so inclined.

<u>Reversed and remanded.</u>