COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:    Judges Huff, Ortiz and Lorish
Argued by videoconference

KIMBERLY PAUL BARNEY

                                                              OPINION BY
v.         Record No. 1057-20-1                    JUDGE GLEN A. HUFF
                                                              NOVEMBER 3, 2021

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Michael A. Gaten, Judge

Anthony J. Balady, Jr., Senior Assistant Public Defender, for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


This Court previously reversed Kimberly Paul Barney's two prior convictions for use of a

firearm in the commission of a felony due to jury instructions that improperly stated the law.

Barney v. Commonwealth (Barney I), 69 Va. App. 604, 616 (2019).  After another trial on

remand, Barney ("appellant") was convicted of one count of the same offense, in violation of

Code § 18.2-53.1.  She now appeals that conviction, challenging the trial court's refusal of her

proposed supplemental instructions and the sufficiency of the Commonwealth's evidence to

prove her guilt.  This Court agrees on both counts and therefore reverses appellant's conviction

and dismisses the indictment against her.

## I.  BACKGROUND

On December 25, 2015, appellant walked into a Walgreens store in the City of Hampton.

She placed a piece of merchandise, a box of candy, on the counter and put a note on top of it.

Appellant then placed her hand in her sweatshirt pocket. Upon doing so, a bulge protruded from her pocket, pointing toward the cashier, Linda Daugherty.

At first, Daugherty did not read the note, mistaking it for a shopping list, and rang up the candy. Appellant told Daugherty to give her the money from the cash register, at which point Daugherty noticed the note. In Daugherty's words, the note explained: "[T]his is a robbery, stay calm, [and] don't make a sound if you want to live." Based on the appearance of the bulge, Daugherty believed appellant held a gun in her pocket and feared if she did not move quickly appellant would shoot her. At no point, however, did Daugherty see a firearm.

To open the cash drawer and comply with appellant's demand, Daugherty had to reinitiate the transaction through the cash register. Throughout the incident, appellant kept her hand in her pocket. As she did so, the bulge's shape shifted. Once Daugherty opened the cash drawer and handed the bills to appellant, appellant left the store. Daugherty notified the store manager of the robbery and contacted police. Security cameras captured the entire incident. Police apprehended appellant after she robbed a second store the next day, December 26.[1] No gun was ever recovered.

Appellant pleaded guilty to two counts of robbery for the December 25 and December 26 robberies. She was then tried on additional counts of use of a firearm in both robberies and was convicted on both counts. On appeal, this Court reversed those convictions, holding that the jury instructions improperly directed the jury that it need not find that she actually used a "firearm" to convict. Barney I, 69 Va. App. at 614.

On remand, the trial court held a second trial. During that trial, the court granted appellant's motion to strike the evidence related to the December 26 firearm charge. The jury

---

[1] The second robbery is relevant only to the procedural history of this case.

could not agree to a verdict on the December 25 firearm charge—the charge at issue here—so the trial court declared a mistrial.

At appellant's third trial, this time for only the December 25 firearm charge, appellant filed a motion to strike the evidence, asserting the evidence did not show that she had a "firearm." The trial court denied her motion, holding the weighing of the evidence fell to the jury. Appellant later renewed her motion to strike at the close of evidence, which the trial court again denied.

Without objection, the trial court approved the model jury instruction for the offense, titled Jury Instruction 7 in this case, which read:

> A firearm is any instrument that is capable of expelling a projectile by force or gunpowder. A firearm is also any object that is not capable of expelling a projectile by force or gunpowder but gives the appearance of being able to do so.
>
> The existence of a firearm may be proved by circumstantial evidence, direct evidence, or both.[2]

A second instruction, Jury Instruction 6, explained the elements of the crime: "The Commonwealth must prove beyond a reasonable doubt . . . (1) [t]hat the defendant used a firearm and (2) [t]hat the use occurred while the defendant was committing a [r]obbery."

Defense counsel proffered ten possible supplemental jury instructions as to the definition of a "firearm" under the statute, seeking to clarify the requirement that the Commonwealth must prove appellant had a firearm or an object with the appearance of a working firearm. For example, Alternate Instruction 5 stated, "The defendant's fingers or hands are not considered a firearm," while Alternate Instruction 3 stated, "It is not sufficient to convict if you believe that the defendant used an object to make the victim believe that she had a firearm." The trial court

_____

[2] Except for a single word, Instruction 7 is identical to Virginia Model Jury Instruction No. 18.702.

- 3 -

refused the supplemental instructions after arguments from the parties, explaining it felt it stood on the "safest ground" approving only the model jury instruction in light of the previous reversal and remand from this Court.

Appellant was convicted of use of a firearm in the commission of a felony, and the court sentenced her to an active sentence of three years' imprisonment. This appeal followed.

## II. ANALYSIS

### A. Supplemental Jury Instructions

#### 1. Standard of Review

When reviewing jury instructions on appeal, it is this Court's "sole responsibility . . . to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Cooper v. Commonwealth, 277 Va. 377, 381 (2009). Although a reviewing court must respect the trial court's "broad discretion in giving or denying instructions requested"—and therefore reviews those decisions for an abuse of discretion—"a trial court abuses its discretion by failing to properly instruct the jury on the elements of an offense." Barney I, 69 Va. App. at 609 (quoting Gaines v. Commonwealth, 39 Va. App. 562, 568 (2003) (*en banc*)). "If the principles set forth in a proposed instruction are fully and fairly covered in other instructions that have been granted, a trial court does not abuse its discretion in refusing to grant a repetitious instruction." Fahringer v. Commonwealth, 70 Va. App. 208, 211 (2019) (quoting Joseph v. Commonwealth, 249 Va. 78, 90 (1995)). To the extent this inquiry requires statutory interpretation, however, the Court reviews those questions *de novo*. Sarafin v. Commonwealth, 288 Va. 320, 325 (2014).

#### 2. The Definition of "Firearm"

In relevant part, Code § 18.2-53.1 states, "It shall be unlawful for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening

manner while committing or attempting to commit . . . robbery." In Barney I, the Court exhaustively reviewed the case law's interpretation of Code § 18.2-53.1, particularly the statute's implied meaning of the term "firearm." 69 Va. App. at 611-14.

The long line of case law elaborating on the term "firearm" in the statute demanded Barney I's "clear conclusion": to obtain a conviction under the statute, the Commonwealth must prove "the objective fact that the instrument used was either *an actual firearm* or *an object that gives the appearance of a firearm*." Id. at 610 (emphasis added). Stated differently, "[p]ossession of a firearm is an essential element of the statutory offense." Yarborough v. Commonwealth, 247 Va. 215, 219 (1994). "[T]he fact that [the victim] merely thought or perceived [the accused] was armed is insufficient to prove that he actually possessed a firearm." Id.

To call a bulge from appellant's pocket "an object that gives the appearance of a firearm" would strain the phrase beyond recognition. Case law limits that phrase to only objects that closely and physically resemble actual, working firearms.[3] For instance, while a replica firearm counts because it "look[s] like" a working firearm, a bulge from the pocket of the accused likely created by a beer can does not. Compare Startin v. Commonwealth, 56 Va. App. 26, 40-41

---

[3] This Court need not fully repeat the analysis conducted by the Court in Barney I. See 69 Va. App. at 610-13 (reviewing the case law and concluding the statute requires a firearm or "an object that . . . gave the appearance of being one"); see also Startin v. Commonwealth, 281 Va. 374, 377, 382 (2011) (holding that although a "John Wayne Replica" of a .45 caliber handgun had no firing pin, it fell under the statute because, "[i]n *its outward appearance*, the replica ha[d] the same size, weight[,] and shape of an operational firearm designed to expel .45 caliber ammunition by explosion" (emphasis added)); Powell v. Commonwealth, 268 Va. 233, 236-37 (2004) (reaffirming Yarborough); Yarborough, 247 Va. at 217-19 (holding the evidence was insufficient to support a conviction under the statute when "something protrud[ed]" from defendant's pocket but police later found only a beer can); Holloman v. Commonwealth, 221 Va. 196, 199 (1980) (holding that a BB gun that had the appearance of a .45 caliber pistol fell under the statute because it was "an instrument which gave the appearance of having a firing capability, whether or not the object actually had the capacity to propel a bullet by the force of gunpowder"); Cox v. Commonwealth, 218 Va. 689, 690-91 (1978) (holding that working pistol loaded with wooden bullets fell under the statute).

(2010) (*en banc*), aff'd, 281 Va. 374 (2011), with Yarborough, 247 Va. at 217-19. This interpretation effectuates the statute's dual objectives of "prevent[ing] actual physical injury or death and . . . discourag[ing] criminal conduct that produces fear of physical harm," while also remaining true to its statutory language. See Startin, 56 Va. App. at 40-41; see also Code § 18.2-53.1 (referring only to "any pistol, shotgun, rifle, or other firearm or [a display of] such weapon"). The limitation to only objects that closely and physically resemble actual, working firearms exists for good reason. Stepping away from this solid ground could fail to provide adequate notice of what is criminal, creating due process concerns. See United States v. Davis, 139 S. Ct. 2319, 2325 (2019) ("Vague laws contravene the 'first essential of due process of law' that statutes must give people 'of common intelligence' fair notice of what the law demands of them." (quoting Connally v. General Constr. Co., 269 U.S. 385, 391 (1926)).

Although the pocket bulge may serve as circumstantial evidence that appellant had a "firearm," the Commonwealth must prove the concealed object itself was a firearm or resembled an actual, working firearm. Therefore, it is not enough for a jury to find that the accused used her finger, or that the object concealed in the pocket looked like it *could be* a gun. For a jury to convict the accused, it must find that the accused, in fact, used or attempted to use an actual firearm or an object so physically similar to a working firearm that it appeared to have the same functionality as one.

### 3. The Trial Court Erred in Denying a Supplemental Instruction

Appellant concedes that the jury instructions at trial correctly stated the law but argues the trial court should have granted her proposed supplemental instructions to clarify the jury instructions. This Court, then, need only decide whether the "principles set forth in [appellant's] proposed instruction[s] are fully and fairly covered in" the approved jury instructions. Fahringer, 70 Va. App. at 211 (quoting Joseph, 249 Va. at 90).

Although this Court "presume[s] the jury will understand and will follow their instructions," those instructions must be "simple, impartial, clear[,] and concise." Gaines, 39 Va. App. at 567 (citation omitted). "When they are, they do not need clarification." Id. Thus, although a "trial judge does not abuse his discretion by failing to modify a correct statement of the law on the mere chance that a jury may not follow *clearly written* instructions," those instructions must first be clear. Id. (emphasis added). It is not error, then, when the trial court refuses an additional instruction that "add[s] no substance, no refinement, no nuance to the principle of the law." Id. In sum, the use of "instructions which are confusing or tend to mislead the jury because of ambiguity or for any other reason is reversible error." State Highway & Transp. Comm'r v. Allmond, 220 Va. 235, 242 (1979).

In the context of this case, the jury instructions fell short of these standards because of their ambiguity, which left room for the jury to make a conclusion contrary to law. Jury Instruction 7 stated that the object used by appellant need only "give[] the appearance of" having the "capab[ility] of expelling a projectile by force or gunpowder." A reasonable jury may have interpreted this instruction as requiring conviction if the bulge from appellant's pocket appeared to have the ability to "expel[] a projectile by force or gunpowder," even if the bulge was not an actual firearm or an object that physically resembled a working firearm. Put simply, the instructions could have misled the jury to find that the bulge itself gave the "appearance" of having the ability to shoot like a gun, even if the pocket or the object inside it did not physically resemble a working firearm.

A conclusion by the jury that the bulge from the accused's pocket was "an object that gives the appearance of a firearm" from its outward appearance alone would fly in the face of established precedent for at least two reasons. First, such a conclusion would improperly shift the focus of the inquiry from the objective—whether the accused actually had a firearm or

- 7 -

similar object—to the subjective—whether a victim could perceive the bulge as a firearm. Barney I, 69 Va. App. at 610 ("[W]hat controls is the *objective* fact that the instrument used was either an actual firearm or an object that gives the appearance of a firearm and not the victim's *subjective perception* that it might have been a firearm." (emphasis added)).

Second, case law requires that the object's outward appearance have a close physical resemblance to a working firearm. For example, the Supreme Court in Holloman held the BB gun at issue was a "firearm" under the statute because it "appear[ed] in size, weight[,] and shape to be a .45 caliber automatic pistol." 221 Va. at 357. In Startin, while noting the statute requires a "broad construction" that goes beyond the literal meaning of the term "firearm," the Supreme Court again focused on the "outward appearance" of the replica firearm at issue, including its "size, weight[,] and shape" resembling "an operational firearm." 281 Va. at 379-82. This Court in Barney I, after analyzing those cases, also focused on outward appearance, concluding that the statute requires "an actual firearm" or "an object . . . that gave the appearance of being one." Barney I, 69 Va. App. at 614 (referring to an "actual or replica firearm"). Barney I did not expand the analysis beyond the physical resemblance of the object's outward appearance to a firearm. Neither will this Court.

The Commonwealth contends that Jury Instructions 6 and 7 fully and fairly set out the standard for the jury because they properly state the law. But the relevant language of Jury Instruction 6 explains only that the jury must find "[t]hat the defendant used *a firearm*," which simply restates the already ambiguous statutory language. And, as explained above, Jury Instruction 7's plain text renders it ambiguous: in the context of this case, a reasonable jury may have (improperly) reasoned that it could convict if the bulge *looked like* it had the ability to shoot the victim, even if it was not a "firearm." The fact that Jury Instruction 7 recited the model instruction verbatim is no excuse. Model instructions are not compulsory and often "require

- 8 -

some changes to make them fit the facts of a particular case." Virginia Model Jury Instructions—Criminal, 1-2 (2020).

Further supporting a finding of error, the question of whether appellant used a firearm (or an object resembling one) was essential to both the offense and the facts of this case. The Court in Barney I reaffirmed that the statute requires the use of a "firearm" and that the jury instructions must make that element clear. 69 Va. App. at 613-14. And at trial, appellant's counsel repeatedly asserted that the Commonwealth must prove appellant possessed a "firearm" rather than that the bulge from her pocket *appeared* to be a firearm. The case turns on this crucial distinction, fundamental to both the case and the statute, amplifying the need to supplement the instructions. Jimenez v. Commonwealth, 241 Va. 244, 250 (1991) ("[W]hen a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter.").

Appellant proffered ten possible jury instructions to try to clarify the ambiguity. The Court need not examine all those proffered instructions, nor will it hold that they are all perfect for this case; but some of the supplemental instructions would have clarified the "firearm" requirement for the jury given the facts of the case. For instance, Alternate Instruction 5 would have clarified to the jury that it could not convict if it found that appellant used only her hand, while Alternate Instruction 3 would have emphasized the importance of an objective inquiry rather than Daugherty's subjective perception that appellant had a firearm.[4] And both correctly stated the law. See Barney I, 69 Va. App. at 610, 614.

---

[4] The Court notes that while these instructions would have provided some clarity in this particular case, trial courts in future cases must exercise their usual discretion in granting, or refusing, any supplemental instruction as necessary to ensure clarity of the final jury instructions on a case-by-case basis. See Hilton v. Commonwealth, 293 Va. 293, 302 (2017) ("Whether to give or deny jury instructions 'rest[s] in the sound discretion of the trial court.'" (alteration in original) (quoting Cooper, 277 Va. at 381)).

In short, Jury Instruction 7's ambiguity may have caused the jury to construe its instructions to mean that it must convict even if it did not find that appellant had a firearm or other object physically resembling a firearm in her pocket. Such a conclusion conflicts with both the statute and settled precedent. To clarify the ambiguity and dispel this improper rationale from the minds of the jury, the trial court should have granted a clarifying instruction. As at least one of appellant's proposed supplemental instructions would have clarified this issue, it was error to deny an additional instruction on the "firearm" element.

## B. Sufficiency of the Evidence

When a reviewing court reverses an appellant's conviction, it must also address the appellant's challenge to the sufficiency of the evidence underlying that conviction "to ensure that a retrial on remand will not violate double jeopardy principles." Wilder v. Commonwealth, 55 Va. App. 579, 594 (2010). "If the evidence adduced at trial was insufficient to convict [appellant], [she] is entitled to an acquittal; if [she] is so entitled, a remand for retrial would violate the Constitution's prohibition against double jeopardy." Parsons v. Commonwealth, 32 Va. App. 576, 581 (2000). Accordingly, the Court will next address appellant's sufficiency challenge.

### 1. Standard of Review

"When reviewing the sufficiency of the evidence to support a conviction, [this] Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148 (2008). This inquiry requires a determination of whether "*any* rational trier of fact could have found the essential elements of the crime *beyond a reasonable doubt*." Wilson v. Commonwealth, 53 Va. App. 599, 605 (2009) (second emphasis added) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). This Court, therefore, must

reverse a conviction when "the evidence creates only a suspicion or probability of guilt." Yarborough, 247 Va. at 218.

Additionally, in assessing whether the evidence was sufficient to find a defendant guilty beyond a reasonable doubt at trial, this Court "review[s] the evidence in the light most favorable to the prevailing party, including any inferences the factfinder may reasonably have drawn from the facts proved.'" Camp v. Commonwealth, 68 Va. App. 694, 701 (2018) (quoting Hannon v. Commonwealth, 68 Va. App. 87, 92 (2017)). This "examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling . . . . [A]n appellate court must consider all the evidence admitted at trial that is contained in the record." Perry v. Commonwealth, 280 Va. 572, 580 (2010) (quoting Bolden, 275 Va. at 147).

### 2. *The Evidence Was Insufficient to Convict Appellant*

Appellant avers that the evidence did not establish that she used a "firearm" during the commission of the robbery. The Commonwealth cites as circumstantial evidence the video footage and Daugherty's testimony describing the pocket bulge, as well as the note's threat against Daugherty's life. This Court agrees with appellant.

Daugherty's testimony sheds little light on the question of whether appellant had a "firearm"; as she conceded at trial, she never saw a firearm, and her subjective belief that the object was a firearm does not, on its own, establish the "firearm" requirement under the statute. Yarborough, 247 Va. at 219; Barney I, 69 Va. App. at 610. The video evidence does not show a firearm either. The footage shows appellant—wearing a pair of large winter gloves— immediately placing her hand in her pocket, which stays there throughout the robbery. While her hand is in her pocket, the bulge first juts out and points toward Daugherty. As the seconds pass, though, the pointed bulge subsides, morphing to a rounded shape. Based on the bulge's shifting appearance, in addition to the fact that appellant wore a large winter glove, a trier of fact

- 11 -

could not reasonably infer from the video alone that appellant held a firearm.  And finally, while the note contained a threat against Daugherty's life, it mentioned nothing of a weapon, let alone a firearm.  Compare Powell, 268 Va. at 237 (holding the evidence was sufficient where appellant claimed to have a gun and kept his hand in a bulged pocket, even though no gun was seen or recovered), with Yarborough 247 Va. at 216-19 (holding the evidence was not sufficient where appellant said, "This is a stickup," with his hand in a bulged pocket, and police later found only a beer can in his pocket).

Investigators never found a firearm.  And other than the above evidence, the Commonwealth introduced no additional circumstantial evidence—or any direct evidence— establishing the bulge was a firearm or an object physically resembling one.  This stands in stark contrast with Barney I.  There the Court held that the evidence was sufficient to support appellant's initial two convictions under Code § 18.2-53.1.  69 Va. App. at 616.  The Court gave great weight to the fact that the two "firearm offenses were tried together."  Id.  During that trial, the jury received evidence of appellant's "threats coupled with the pointing motions she was making in her jacket pocket" during *both* robberies.  Id.  In the threat from the December 26 robbery, appellant said she had "two guns" facing the store clerk and that appellant "was going to shoot [her]" if she did not hurry.  Id. at 615 (internal quotation marks omitted).  Accordingly, the Court reasoned, the jury "was free to infer that because Barney said she had a gun in the second robbery, she used one at the first robbery."  Id.

But because of appellant's subsequent acquittal on the December 26 charge, none of this evidence was introduced at the trial below for the December 25 charge.  Without the cumulative effect of this evidence, the case against appellant collapses.

Even after considering the admitted evidence in the light most favorable to the Commonwealth, no rational, properly instructed jury could conclude beyond a reasonable doubt

that appellant used a firearm or an object physically resembling a working firearm. Essentially, the Commonwealth's "evidence create[d] only a suspicion or probability" that appellant "'may have had' a firearm" in her pocket. Yarborough, 247 Va. at 218. That is not enough to convict. Appellant's conviction cannot stand, and she deserves an acquittal. Because the evidence was insufficient, remanding for a new trial would subject appellant to double jeopardy in violation of the Constitution. This Court therefore reverses her conviction and dismisses the indictment against her.

### III. CONCLUSION

It was error to deny appellant's supplemental instructions on the definition of a firearm. Furthermore, the evidence at trial was insufficient to establish appellant's guilt beyond a reasonable doubt. For these reasons, the Court reverses the trial court's judgment and vacates appellant's conviction.

Reversed and dismissed.

Ortiz, J., concurring in the judgment reversing and dismissing the conviction.

I concur with the majority that this conviction must be reversed and dismissed. The opinion correctly holds that the evidence presented at trial was insufficient to establish appellant's guilt beyond a reasonable doubt. Given that holding, the analysis should end there. I write separately to refrain from opining on the jury instructions.

While the majority's discussion regarding jury instructions is compelling, it amounts to advisory dicta. The Virginia Supreme Court has repeatedly cabined the scope of appellate decisions, stating that "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" Commonwealth v. White, 293 Va. 411, 419 (2017) (quoting Commonwealth v. Swann, 290 Va. 194, 196 (2015)); see also Zebbs v. Commonwealth, 66 Va. App. 368, 378 n.9 (2016) (recognizing that addressing issues that are not necessary to resolve a case "would be to offer an advisory opinion, which we are not empowered to do").

In this case, the best and narrowest ground is to find the evidence insufficient as a matter of law and dismiss the conviction. Any further analysis exceeds the "best and narrowest grounds available." Accordingly, I would reverse and dismiss the conviction because the evidence was insufficient as a matter of law.