PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, Chafin, and Mann, JJ., and Mims, S.J.

COMMONWEALTH OF VIRGINIA

OPINION BY
v. Record No. 211126                                   JUSTICE D. ARTHUR KELSEY
                                                              MARCH 16, 2023
KIMBERLY PAUL BARNEY


FROM THE COURT OF APPEALS OF VIRGINIA


Kimberly Paul Barney handed a note to a cashier demanding money or her life.  The

cashier took the threat seriously because she saw Barney place her hand in a pocket and point

what appeared to be a handgun at the cashier.  A jury convicted Barney of using a firearm during

the commission of a robbery.  The Court of Appeals vacated the jury verdict, holding that the

jury instructions were flawed and that no rational jury could find that Barney had a firearm in her

pocket.  On both points, we disagree and reverse.

I.

The evidence at Barney's jury trial consisted primarily of testimony from Linda

Daugherty, a cashier at a Walgreens store.  Early one morning in 2015, Barney appeared at

Daugherty's cash register.  "[P]art of her face was shielded" by a hat that covered her eyes and

"upper half of the face."  J.A. at 166, 169-70.  Barney presented Daugherty with a box of candy

and a handwritten note that stated:  "[T]his is a robbery, stay calm, [and] don't make a sound if

you want to live."  *Id.* at 157.  Mistakenly thinking the note was a shopping list, Daugherty

initially ignored it, "rang up" the candy on the cash register, and put the candy in a bag.  *Id.*

Displeased by the oversight, Barney verbally commanded:  "[G]ive me the money."  *Id.* at 158.

Daugherty then read the note.

"[W]hen I saw the note," Daugherty testified, "I looked and it appeared to me that she

had a weapon in her pocket[,] and it was pointing at me in a motion for me to notice that she had

what I believed to be a weapon." *Id.* She continued, "I was being robbed at what I believed to be gunpoint." *Id.* at 157. Reviewing at trial a photograph taken by a security camera at that moment, Daugherty confirmed her understanding that Barney had "her hand in her pocket pointing what I believed to be a weapon in my direction." *Id.* at 159. She further testified, "I was afraid. I was scared" because "the weapon was being pointed at me" in a way "that if she was to pull that trigger . . . I would be shot basically." *Id.* at 160-61.

"[S]cared out of [her] mind," *id.* at 172-73, Daugherty gave Barney the cash she was demanding. After the robbery was complete, Barney held the cash in her left hand and walked out of the store. The security video shows that Barney did not take her right hand out of her pocket at any point during her departure. The jury watched the security footage of the incident. A police detective testified that Barney was arrested the following day, but investigators were never able to find the getaway vehicle and search it. They had been able to search other vehicles "related to" Barney but had found no firearm in them. *Id.* at 193.

After denying Barney's motions to strike at the end of trial, the court instructed the jury. On the charge alleging the use of a firearm during the commission of a felony, the court used a definitional instruction from the Virginia Model Jury Instructions. Instruction No. 7 defined a "firearm" under Code § 18.2-53.1 as "any instrument that is capable of expelling a projectile by force or gunpowder. A firearm is also any object that is not capable of expelling a projectile by force or gunpowder but gives the appearance of being able to do so." J.A. at 276; *see also* Virginia Model Jury Instructions—Criminal, No. 18.616, at 18-67 (2021-2022 repl. ed.).[1] The

---

[1] Instruction No. 7 differs from the Model Jury Instruction by one word, replacing "an object" with "any object." *Compare* Virginia Model Jury Instructions—Criminal, No. 18.616, at 18-67 (2021-2022 rep. ed.), *with* J.A. at 276. On appeal, Barney does not contend that this difference has any impact on the analysis.

2

model instruction thus included not only real firearms but also replicas appearing to be real firearms. *See generally Startin v. Commonwealth*, 281 Va. 374, 381-82 (2011).

Barney's counsel made clear that he did not "disagree with that model instruction" and did not object to it being given by the trial court. J.A. at 206. He did, however, offer ten additional instructions that he wanted to have considered. Counsel said that he "particularly like[d]" one of them, which stated: "The defendant's fingers or hands are not considered a firearm." *Id.* at 206, 281. After a long discussion, the prosecutor assured the court that he was "not going to say that a finger can be a gun" to the jury during closing argument. *Id.* at 219. The court thereafter refused all of Barney's 10 additional instructions. True to his word, the prosecutor in closing argument simply summarized the cashier's testimony and argued that circumstantial evidence had proven that Barney had used a firearm during the robbery.

In his closing argument, Barney's counsel asserted that there was no firearm of any kind in Barney's pocket. She had merely put "her hands in the shape of a gun." *Id.* at 237-38. "Of course," counsel conceded, Daugherty "thought it was a gun." *Id.* at 238. "It is possible," counsel also admitted, that Barney perhaps had a "really small" handgun in her pocket. *Id.* at 241. But, he ultimately argued, Barney "didn't have a gun." *Id.* at 239. Nor did she have "an object that gives the appearance of a firearm" because "[w]hat we are talking about with that" is "BB guns, . . . replica guns, fake guns that are convincing." *Id.* Instead of possessing any of those objects, counsel concluded, Barney merely had "a finger" in her pocket, and "a finger is not an object that gives the appearance of a gun." *Id.* at 239-40.

In his rebuttal argument, the prosecutor did not contest the interpretation given by Barney's counsel of the firearm definitional instruction. To the contrary, he accepted it as a given. "When [Barney] leaves with the cash," the prosecutor rhetorically asked the jury, "does

3

she take her hand out?" *Id.* at 243. "No. She walks out with one hand with the cash and the bulge still remains on the right side." *Id.* If she was not concealing a handgun, Barney could have pulled her hand out of her pocket while "going out the store" because at that point there was no reason to continue any ruse. *Id.* at 244. "The only reason [Barney] didn't take her hand out of her pocket," the prosecutor concluded, "is because *inside that pocket was not just her hand*, it was an *object that had the appearance of an actual handgun* that could fire a shot." *Id.* (emphases added).

The jury returned a unanimous verdict of guilty. During their deliberations, the jurors submitted no questions or requests for clarification to the trial judge. After the court entered a final judgment, Barney appealed to the Court of Appeals on two grounds. First, she argued that the firearm jury instruction was erroneous in the absence of one of her ten explanatory instructions. While counsel acknowledged that he did not "ever properly object[] to the model instruction"[2] and further conceded that "the model instruction is not inaccurate,"[3] he nonetheless argued that the instruction needed to be amplified to ensure that the jury did not convict Barney in the event that she merely placed her finger in her pocket. Second, Barney argued that the evidence was insufficient as a matter of law to prove her guilt. Counsel did not dispute that "the victim in this case . . . had every belief that Ms. Barney had an object that was capable of expelling a projectile by force or gunpowder." CAV Writ Panel Oral Argument Audio at 3:02 to

---

[2] CAV Writ Panel Oral Argument Audio at 1:40 to 1:47 (May 18, 2021); *see also id.* at 3:29 to 3:31 ("I didn't object to the model instruction."); *id.* at 6:15 to 6:26 ("Should there have been an objection at the time . . . that the second half [of the model instruction] is misleading? Perhaps.").

[3] CAV Merit Panel Oral Argument Audio at 2:35 to 2:42 (Oct. 13, 2021); *see also* CAV R. at 450 (stating that Barney's "argument is not that the model instruction is erroneous," and she "concedes that the model instruction is, generally speaking, an accurate statement of the law").

3:12 (May 18, 2021). Even so, counsel argued, no circumstantial evidence proved that Daugherty was correct.

A panel of the Court of Appeals vacated the jury verdict and reversed the conviction. *See Barney v. Commonwealth*, 73 Va. App. 599, 615 (2021). Addressing the definitional instruction, the majority opinion stated that it was "ambiguous" because a "reasonable jury may have" thought that a finger in a pocket fit within the instruction's definition of firearm. *Id.* at 611. The majority opinion did not say which of the alternative instructions best clarified this ambiguity, but it did conclude that "at least one" of them should have been given by the trial court. *Id.* at 612.

Addressing Barney's challenge to the sufficiency of the evidence, the majority opinion acknowledged that a "pocket bulge may serve as circumstantial evidence that [Barney] had a 'firearm,'" but held that, under the circumstances of this case, no rational jury could find that Barney concealed a handgun in her pocket. *Id.* at 608. In support of this conclusion, the panel viewed the security video that had been shown to the jury. Acknowledging that the "bulge first juts out and points towards Daugherty," the majority opinion determined that the bulge later "subside[d]" and developed a "shifting appearance." *Id.* at 614. The majority opinion also considered Barney's death threat — cooperate "if you want to live," J.A. at 157 — but downgraded its persuasive weight because the note did not identify the intended murder weapon. Finally, the majority noted that "[i]nvestigators never found a firearm." *Barney*, 73 Va. App. at 614.

The third judge on the Court of Appeals panel filed an opinion "concurring in the judgment" to the extent that it found the "evidence insufficient as a matter of law." *Barney*, 73 Va. App. at 615-16 (Ortiz, J., concurring). The insufficiency holding in the majority opinion, the

concurring judge pointed out, ended the case in its entirety because that finding secured Barney's double-jeopardy right not to be retried on remand. The concurring opinion also observed that the majority's ruling on the jury instruction issue — which, if correct, would permit a retrial on remand — was not a holding at all but rather "advisory dicta." *Id.* at 616. *See Commonwealth v. White*, 293 Va. 411, 419 (2017); *see also Butcher v. Commonwealth*, 298 Va. 392, 396-97 (2020) (plurality opinion); *Commonwealth v. Harley*, 256 Va. 216, 217-20 (1998).

## II.

On further appeal to us, the Commonwealth argues that the Court of Appeals erred when it held that the trial court abused its discretion by not granting at least one of Barney's ten supplemental jury instructions. The Commonwealth also contends that the Court of Appeals erred in holding that no rational juror could have concluded that Barney had a firearm (as opposed to merely her finger) in her pocket during the robbery. We agree with the Commonwealth on both points.

## A.

At trial, Barney did not object to the model jury instruction defining a firearm under Code § 18.2-53.1 as "any instrument that is capable of expelling a projectile by force or gunpowder" or an "object that is not capable of expelling a projectile by force or gunpowder but gives the appearance of being able to do so." J.A. at 206, 276. On appeal, Barney has repeatedly stated that the instruction is an accurate statement of law. *See, e.g.*, *supra* notes 2-3. To the extent that Barney now suggests that this instruction is nonetheless flawed because of its intrinsic ambiguity, that argument has been waived. *See* Rule 5:25; *Smith v. Commonwealth*, 296 Va. 450, 462 (2018); *Commonwealth v. Jerman*, 263 Va. 88, 93-94 (2002). The elements-of-the-crime instruction, which accompanied the definitional instruction, stated that the evidence must

6

show that the defendant "used a firearm." J.A. at 275. Barney also agreed to this instruction at trial and thus waived any objection to it on appeal.

Despite these procedural defaults, the Court of Appeals majority opinion found that the definitional and elements-of-the-crime instructions "fell short of [clarity] standards because of their ambiguity, which left room for the jury to make a conclusion contrary to law." *Barney*, 73 Va. App. at 609. "[T]he relevant language of Jury Instruction 6," the majority opinion reasoned, "explains only that the jury must find '[t]hat the defendant used *a firearm*,' which simply restates the already ambiguous statutory language. And, as explained above, Jury Instruction 7's plain text renders it ambiguous . . . ." *Id.* at 611 (emphasis in original).

We accept that both of these conclusions, if true, could in some cases render the instructions flawed. A jury instruction, after all, cannot be an accurate statement of law if it leaves "room for the jury to make a conclusion contrary to law." *Barney*, 73 Va. at 609. Because Barney consented to the instructions and disclaimed any intrinsic legal error in them, however, we treat these instructions as establishing the "law of the case." *See Smith*, 296 Va. at 461-62.[4] The Court of Appeals majority erred in failing to deem these defense concessions as establishing the law of the case.

This conclusion does not end our analysis, however, because a trial court has the discretion to give tailored instructions to focus a jury on specific contested issues. Well-recognized principles govern appellate review of such instructions:

> Once the judge has made an accurate and correct charge, the extent
> of its amplification must rest largely in his discretion. The trial
> judge in the light of the whole trial and with the jury before him

---

[4] Barney does not argue before this Court that he should be relieved of this waiver under the ends-of-justice exception and does not make any showing that would be sufficient for the exception to apply. *See generally Hamilton v. Commonwealth*, 69 Va. App. 176, 193-95 (2018); *Alford v. Commonwealth*, 56 Va. App. 706, 708-710 (2010).

7

> may feel that to repeat the same words would make them no more clear, and to indulge in variations of statement might well confuse. How far any charge on technical questions of law is really understood by those of lay background would be difficult to ascertain, but it is certainly more evident in the living scene than in a cold record.

*United States v. Bayer*, 331 U.S. 532, 536-37 (1947), *quoted in Kennemore v. Commonwealth*, 50 Va. App. 703, 712-13 (2007). Guided by these principles, "[w]e rely heavily on the instincts of trial judges on where to draw that line." *Kennemore*, 50 Va. App. at 712; *see also Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) ("Whether to give or deny jury instructions 'rest[s] in the sound discretion of the trial court.'" (citation omitted)).

The exercise of judicial discretion presupposes "that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable." *Du v. Commonwealth*, 292 Va. 555, 564 (2016) (citation omitted). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Sauder v. Ferguson*, 289 Va. 449, 459 (2015) (citation omitted). It necessarily follows that an abuse of discretion cannot be shown merely because "[r]easonable trial judges and even some members of this Court, had they been sitting as trial judges in this case," might have reached a different conclusion than the one under review. *Coe v. Commonwealth*, 231 Va. 83, 88 (1986). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (citation omitted).

Barney argues that the trial court abused its discretion in failing to give an instruction stating that a finger does not fit within the definition of a firearm. Reviewing the "cold record" of this case on appeal, *Bayer*, 331 U.S. at 537, we cannot agree. Barney is of course correct that a mere finger — whether concealed in a pocket or not — is not a firearm. In closing argument,

8

Barney's counsel carefully explained why this was correct under the trial court's definitional instruction:

> She didn't have an object that gives the appearance of a firearm. What we are talking about with that[,] we are talking about BB guns[;] we are talking about replica guns, fake guns that are convincing. She has a finger[;] a finger is not an object that gives the appearance of a gun.

J.A. at 239-40.

In his closing argument, the prosecutor never once contested Barney's interpretation of the court's definitional instruction. Nor did the prosecutor ever argue that the jury could convict Barney for merely placing her finger in her pocket. To be sure, he specifically disclaimed any such argument when directly asked by the trial court. *See id.* at 219. He treated Barney's finger-*non*-firearm theory of innocence as legally valid but factually untrue. After pointing out to the jury that Barney did not take her hand out of her pocket as she left the store, the prosecutor explained why she did not do so: "The only reason [Barney] didn't take her hand out of her pocket is because inside of that pocket was *not just her hand*, it was an *object that had the appearance of an actual handgun* that could fire a shot." *Id.* at 244 (emphases added).

As framed by the closing arguments at trial, the only contested issue was a purely factual one: While threatening to murder Daugherty during a robbery, did Barney point a firearm or a finger at her? The Commonwealth said it was a firearm, not a finger. Barney said it was a finger, not a firearm. No one said it could have been a finger and a firearm at the same time. Given the decisional boundaries of this case, the trial judge did not abuse his discretion by refusing additional instructions addressing a point that the jury was not asked to decide. To be clear, we fully accept that a rational jury under the facts of this case could have accepted Barney's mere-finger argument. But, as we have said in other cases, "[t]he jury's choice not to

9

do so is not attributable to a defect in the court's instruction." *Payne v. Commonwealth*, 292 Va. 855, 872 (2016).

Perhaps so, Barney argues, but the jury still could have misinterpreted the firearm definitional instruction to include a finger even though the prosecution and defense both disclaimed this theory. We appreciate this point but consider it wholly speculative. To convict Barney based upon such a misunderstanding, twelve jurors would have had to conclude unanimously (without any prior request for clarification from the trial court) that the term "object" in the firearm definitional instruction could mean a person's finger. Ordinary people, however, do not speak that way. If a person were asked, "did you just put an *object* in your pocket?" The answer would be something like, "yes, my wallet" or "no, just my hand." Nor would anyone likely say, for example, "I put my objects on the keyboard while typing" or "I squeezed my trigger object and fired the rifle at the shooting range." The linguistic stretch necessary to accept Barney's hypothesis does not fit the evidence presented at the trial, the closing arguments of either counsel, or the way most people would understand the words of the jury instructions.

In short, the trial court did not abuse its discretion in refusing to issue a specific instruction explicitly saying that a finger is not a firearm because that was never a contested issue in the case. The Court of Appeals majority erred by concluding otherwise.[5]

---

[5] The Court of Appeals majority found it unnecessary to examine each of the ten proffered instructions but did offer the view that while not all of them were "perfect for this case[,] . . . some of the supplemental instructions would have clarified the 'firearm' requirement for the jury given the facts of the case." *Barney*, 73 Va. App. at 611-12. We offer no opinion on whether the trial court could have given any one or more of these supplemental instructions. We only hold that, under the specific circumstances of this case, the trial court did not abuse its discretion in failing to do so.

10

B.

We next turn to the Commonwealth's argument that the Court of Appeals failed to "give proper deference to the fact finding at trial," Reply Br. at 4, and substituted its view of the probative weight of the circumstantial evidence in place of the jury verdict. For several reasons, we agree with the Commonwealth.

1.

Under the governing standard, "we review factfinding with the highest degree of appellate deference." *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015). When presented with a sufficiency-of-the-evidence challenge in criminal cases, we review the evidence in the "light most favorable" to the Commonwealth, the prevailing party in the trial court. *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018) (per curiam) (citations omitted).

This deferential principle applies not only to "matters of witness credibility" but also to the factfinder's "interpretation of all of the evidence, including video evidence" presented at trial. *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022). The factfinder "views video and other evidence to determine what it believes happened; we, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the [factfinder] did." *Id.*

Considering the evidence from that vantage point, "[a]n appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable

11

doubt.'" *Williams v. Commonwealth*, 278 Va. 190, 193 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). Thus, "it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929). "It has long been deemed 'an abuse of the appellate powers to set aside a verdict and judgment, because an appellate court, from the evidence as written down, would not have concurred in the verdict.'" *Perkins*, 295 Va. at 327 (alterations and citation omitted). The only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010).

In applying this standard of review, we eschew the divide-and-conquer approach, which examines each incriminating fact in isolation, finds it singularly insufficient, and then concludes that the sum of these facts can never be sufficient. Instead, in an appellate sufficiency review, the evidence is "considered as a whole." *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979). This approach recognizes that "while no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (citation omitted). Relying on this commonsense observation, we have often "emphasized the importance of this totality-of-the-evidence analysis." *Id.* at 464.

When conducting a sufficiency review on appeal, we do not "distinguish between direct and circumstantial evidence" because the factfinder "is entitled to consider all of the evidence, without distinction, in reaching its determination." *Id.* (citation omitted). "Indeed, in some cases circumstantial evidence may be the only type of evidence which can possibly be produced."

12

*Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (citation omitted). "A circumstantial fact is admitted on the basis of an inference when the inference is a probable explanation of another fact and a more probable and natural one than other explanations, if any." *Toler v. Commonwealth*, 188 Va. 774, 780 (1949). Circumstantial evidence must prove guilt beyond a reasonable doubt but not "beyond all doubt." *See id.*

2.

We have addressed on several occasions the limits of rational factfinding in cases like this. But we have never said that a criminal could escape liability for unlawfully using a firearm by the simple expedient of concealing it. In the leading case, *Powell v. Commonwealth*, we affirmed a conviction under Code § 18.2-53.1 when the victims never saw a handgun and never "observed the outline of a gun in [the robber's] clothing." 268 Va. 233, 235 (2004). Instead, the robber merely "kept his hand in his pocket" and said "that he had a gun and threatened to 'hurt' them" if the victims did not hand over the money. *Id.* at 237. The robber was arrested shortly thereafter, but "no gun was recovered." *Id.* We held that a rational jury could conclude that the robber had a firearm in his pocket. *Id.*; *see also Courtney v. Commonwealth*, 281 Va. 363, 368 (2011).

The Court of Appeals distinguished *Powell* because Barney did not expressly tell Daugherty that she "had a gun," *Powell*, 268 Va. at 237, in her pocket. Instead, Barney merely pointed what looked like a gun at Daugherty and warned her to cooperate if she "want[ed] to live." J.A. at 157. We see this as a feather-weight distinction. Barney threatened to kill Daugherty. Barney made this threat while pointing at Daugherty what looked like the barrel of a handgun. The murder weapon in her pocket — Barney's words and gestures obviously implied — was a handgun, not a finger. We thus see no persuasive value in the observation that,

13

unlike in *Powell*, Barney's note "mentioned nothing of a weapon, let alone a firearm." *Barney*, 73 Va. App. at 614.[6]

The closing argument to the jury by Barney's counsel reinforces our view. Counsel interpreted the circumstances of this case to present only one of two possible scenarios. Either Barney had an actual firearm — perhaps a "really small" handgun — or she simply had "her fingers in her pocket." J.A. at 238-41. Counsel never argued that Barney could have had some weapon other than a firearm in her pocket (such as a knife, a set of brass knuckles, or some melee weapon) to back up her murder threat. We consider the defendant's closing argument because "[o]f course, upon appellate review, the issue of exclusion of reasonable theories of innocence is limited to those theories advanced by the accused at trial." *Hudson*, 265 Va. at 514. Where, as here, the defendant does not testify at trial, we examine the "theory of innocence [that] was advanced in [defense] counsel's argument to the jury." *Id.* The jury, therefore, was faced with two scenarios: a finger or a firearm. Barney's death threat to Daugherty was either a hoax perpetrated by a finger or a warning that she would be shot by a firearm. Given the actual, not hypothetical, case before the jury, it makes no difference that Barney's murder threat did not explicitly mention "a weapon, let alone a firearm," *Barney*, 73 Va. App. at 614.

After distinguishing *Powell*, the Court of Appeals found persuasive our decision in *Yarborough v. Commonwealth*, in which the robber approached the victim in a driveway and

---

[6] Our colleagues in dissent appear at once to rely upon and then reject this distinction. *Compare post* at 23 (distinguishing *Powell* because the defendant "explicitly stated that he possessed a firearm" whereas here "Barney never affirmatively stated that she possessed a firearm"), *with post* at 26 n.8 (disavowing any "rule which would require an affirmative statement confirming possession of a firearm"). To us, the distinction is not (as the dissent frames it) between making an inculpatory statement and not making an inculpatory statement. It is between a robber saying, "I have a firearm" versus "cooperate if you want to live" — two highly incriminating statements.

14

said, "This is a stickup[;] give me all your money," 247 Va. 215, 216-17 (1994). The robber had both hands in his pockets as he said this. The victim saw a protrusion in the robber's right pocket that looked like a gun. After the robber took the victim's money, he "fled in the direction of a nearby subway" station. *Id.* at 217. About 15 minutes later, police officers arrested the robber in a Metro station and discovered only a "chilled, unopened can of beer" in the robber's pocket. *Id.* After his arrest, officers searched the area where the robber could have been during those few minutes. The dragnet included "the Metro station and surrounding area, the scene of the robbery and surrounding area, and various streets." *Id.* No firearm of any kind was found.

We reversed the robber's conviction for using a firearm during the commission of a felony. The specific fact pattern in *Yarborough*, we held, was "insufficient, as a matter of law, to support the firearm conviction." *Id.* at 219. Though we set the sufficiency baseline there, we did not elaborate on our rationale or discuss how any of the facts calibrated into our decision.

We decided *Powell* a decade after *Yarborough*. *Powell* cited *Yarborough* for the relevant principles of law and then pointed out distinguishing facts that led us to affirm the robber's conviction. In doing so, we acknowledged two factual similarities between the two cases. As was true in *Yarborough*, the victim in *Powell* never saw a firearm. If it existed at all, it was concealed in the robber's pocket. Similarly, as was true in *Yarborough*, the police in *Powell* never found a firearm. What was different, dispositively so, was the extent of the post-robbery search for a firearm and the results of the personal search of the robber.

In *Yarborough*, police searched the robber about 15 minutes after the robbery. They found a cold beer can in the robber's pocket, not a firearm. The police also searched a wide geographic area where the robber could have disposed of a weapon during those 15 minutes. Again, they found no firearm. The search in *Powell* was nothing of this magnitude. The robber

in *Powell* left the scene of the crime with a companion in a taxicab. The police searched the taxicab but never searched the robber or his companion. "[N]othing in the record," we emphasized, "indicates that the police ever searched [the robber] or [the robber's] companion when apprehended or when transported to the police station." *Powell*, 268 Va. at 237. The take-away from this comparison is that the circumstances after the robbery matter. Those circumstances can inform resolution of the ultimate question whether a rational factfinder could believe that the robber had a firearm, a finger, or a beer can in his or her pocket.

We hold that the jury in Barney's case acted rationally by finding her guilty of using a firearm while robbing Daugherty. As we found in *Powell* (and unlike what we found in *Yarborough*), the circumstantial evidence in Barney's case was legally sufficient to support her conviction. The key basic facts are these:

- Barney threatened to murder Daugherty while "pointing what [Daugherty] believed to be a weapon in [her] direction." J.A. at 159. The bulge in Barney's pocket did not look like a finger. Daugherty was "scared out of [her] mind," *id.* at 172, because she thought she was being robbed at "gunpoint," *id.* at 157. If Barney "pull[ed] that trigger," Daugherty understandably believed, she "would be shot." *Id.* at 160-61.

- No evidence suggested that the threatened murder weapon in Barney's pocket was a weapon other than a "firearm" as defined by Code § 18.2-53.1. Given the evidence in the case, Barney's counsel correctly reasoned that the only issue the jury needed to decide was whether the bulge in Barney's pocket was a finger or a "really small" handgun. J.A. at 241; *see also id.* at 237-38.

- The surveillance video does not discredit Daugherty's testimony about what she saw when face to face with Barney during the robbery. To the contrary, though inconclusive by itself, the video can be fairly interpreted to corroborate Daugherty's testimony that the bulge in Barney's pocket looked like a concealed handgun. Barney's counsel admitted as much at trial. After imploring the jury to "watch this video," *id.* at 237, Barney's counsel conceded that the bulge in Barney's pocket was "in the *shape of a gun*" and thus Daugherty "*[o]f course . . . thought it was a gun*," *id.* at 238 (emphases added).

16

- Unlike in *Yarborough*, the police in Barney's case did not search her or her surroundings within minutes of the robbery. Rather, they arrested and searched Barney the following day. They were never able to locate or search her getaway car.[7]

- Finally, as was true in *Powell* but not in *Yarborough*, Barney was not apprehended soon after the robbery with a cold beer or any other object in her pocket that could have explained what the victim in Yarborough may have seen and mistakenly thought to be a firearm.

Given these circumstances, a rational jury could find that Barney threatened to kill Daugherty during the robbery and used a concealed firearm as the threatened murder weapon. Factfinders have the decisional power "to draw reasonable inferences from basic facts to ultimate facts," *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (citation omitted), and "those inferences cannot be upended on appeal unless" they are "so attenuated that they 'push "into the realm of non sequitur,"'" *Perkins*, 295 Va. at 332 (citations omitted). Adhering to these principles, we hold that the evidence was sufficient to convict Barney of violating Code § 18.2-53.1.[8]

---

[7] After acknowledging that "the majority rightfully states that the circumstances after the robbery matter," the dissent asks, "but are not the circumstances immediately *before and during* the robbery, equally important?" *Post* at 24. It is a fair question, to which we answer: yes, of course. As described above, the prior circumstances included a robber threatening to murder the victim while pointing what appeared to be a concealed handgun at her.

[8] The dissent argues that our holding raises additional unanswered questions. Going forward, "Is *Barney* controlling, or is *Yarborough*?" *Post* at 19. In other words, according to the dissent, *Yarborough*'s holding regarding the insufficiency of "a victim's subjective belief as to the presence of a firearm" is "now no longer part of the equation . . . or is it?" *Post* at 19.

To be clear, *Yarborough* has not been overturned. It has been distinguished because it involves materially different facts than Barney's case. With respect to the "or is it" question, we reject the assumption underlying it. No Virginia precedent, including *Yarborough*, has ever held that a robbery victim's testimony about seeing what appeared to be a concealed weapon was *not* "part of the equation." *Post* at 19. The totality of other circumstances may refute (as in *Yarborough*) or reinforce (as in *Powell* and Barney's case) a crime victim's eyewitness testimony. But it is certainly "part of the equation" and always will be. *See generally* 1 Simon Greenleaf, A Treatise on the Law of Evidence § 7, at 21 (John Henry Wigmore ed., 16th ed. 1899) ("No inquiry is here proposed into the origin of human knowledge; it being assumed, on

III.

The Court of Appeals thus erred in holding that the trial court abused its discretion by not supplementing the agreed-upon jury instruction defining a firearm and in holding that the evidence was insufficient to sustain the jury's guilty verdict. We vacate the decision of the Court of Appeals and reinstate the trial court's final judgment confirming the verdict.

*Reversed and final judgment.*

JUSTICE MANN, with whom CHIEF JUSTICE GOODWYN and SENIOR JUSTICE MIMS join, dissenting.

The Court of Appeals panel may have disagreed on certain points, but they were unanimous that the Commonwealth failed to present sufficient evidence to prove that the bulge in Barney's pocket was a firearm. A straightforward analysis of our prior cases clearly supports their view. Therefore, I would affirm the Court of Appeals on the sufficiency of the evidence issue, and I respectfully dissent from the majority opinion.

---

the authority of approved writers, that all that men know is referable, in a philosophical view, to perception and reflection" and "much of what we are content to regard and act upon as knowledge [has] been acquired through the perception of others."); Kent Sinclair & Charles E. Friend, The Law of Evidence in Virginia § 13-1[a], at 759 (8th ed. 2018) ("In reality, any statement by a witness is to some degree a conclusion based upon inferences drawn from sensory clues."); 2 John Henry Wigmore, Evidence in Trials at Common Law § 650, at 755 (3d ed. 1940) ("The practical tests, then, and the detailed rules [for testimonial evidence], are in strictness concerned with observation and not with knowledge.").

Finally, we find unhelpful the criticism that "[o]ur margins now cloud the paradigm," particularly for trial judges who sometimes must resolve "these issues in a matter of seconds or minutes." *Post* at 20. We do not know what to make of a paradigm with clouded margins, but we do know that legal issues sometimes require more than a few seconds or minutes to resolve. We have confidence in the capacity of the trial bench in this Commonwealth to take the time necessary to address difficult legal issues that necessitate a thorough review of prior precedents. In this very case, after all, we are affirming a trial judge who did exactly that.

Barney's conviction required the Commonwealth to prove, beyond a reasonable doubt, that the object concealed in Barney's pocket was "capable of expelling a projectile by force or gunpower" or gave "the appearance of being able to [expel a projectile by force or gunpowder]." Under our precedent, prior to today's opinion, the Commonwealth clearly failed to do so.

I believe that the majority opinion (1) fails to consider and appreciate that the burden of proof regarding the existence of a firearm rests entirely on the Commonwealth, (2) fails to focus its analysis, in part, on the evidence which would be relevant to a trier of fact in identifying the type of object concealed in Barney's pocket,[1] and (3) erroneously implies that the paucity of evidence regarding the existence of a firearm inextricably leads to a conviction.

The majority's sedulous opinion will create some unintended consequences. The opinion will leave trial judges and lawyers to ask, "Is *Barney* controlling, or is *Yarborough*?" The majority asserts that our precedent under *Yarborough* has not been overturned. Yet, *Yarborough* unquestionably held that a victim's subjective belief as to the presence of a firearm "is insufficient to prove that [the accused] actually possessed a firearm." *Yarborough*, 247 Va. at 219. In reading the majority's opinion, it appears as though that holding is now no longer part of the equation…or is it? It is confusing, that is for sure.

The well-settled paradigm which informed our Code § 18.2-53.1 analysis will be disrupted by the majority's holding in this case. Our margins now cloud the paradigm. Moving forward, the crafting of arguments and jury instructions, the constructs of direct and cross-examination, and strategic decisions will be informed more by estimation than certainty.

---

[1] The majority (1) repeatedly relies upon arguments made by defense counsel at trial in its analysis of whether the Commonwealth carried its burden of proof, (2) focuses on facts that are irrelevant to the issue of whether the Commonwealth proved that the concealed object was actually a firearm, and (3) fails to consider the unique factual circumstances of our prior cases and, in doing so, misses the mark in its application of the law to the Commonwealth's burden.

19

Correspondingly, the role of the trial judge in ruling on these issues becomes that much more difficult. While we take great care and time in crafting these opinions, it is important to keep in mind that trial judges are required to resolve these issues in a matter of seconds or minutes. Like the majority, I have confidence in the trial bench in this Commonwealth to thoroughly address the issues before them. However, with the slim differences between *Barney* and *Yarborough* as described by the majority, I worry that, at least on this subject, it would have been helpful to be more illuminating.

BACKGROUND

Agreeing with the majority that evidence must be "considered as a whole," *Stamper*, 220 Va. at 273, it is a good first step to address the other evidence presented at trial. Barney is seen on the surveillance video approaching Daugherty, where she used her right hand to place the candy box and note onto the counter. Once done, her hand was empty. At this point in the video, there is no distinguishable shape or bulge in her pocket. In fact, at that moment, the pocket's opening is agape, and no shape or bulge can be discerned. Barney then returns her right hand to her pocket. It is then, only once Barney's hand returns to her pocket, that another type of shape[2] takes form in Barney's right-hand sweatshirt pocket. Furthermore, throughout the robbery, an unidentified man stood unconcerned in line behind Barney, and attempted to proceed with his transaction once Barney left the store before being turned away by Daugherty. At trial, Daugherty testified that she never saw a firearm. No firearm was ever recovered. It is these pieces of evidence and the "combined force of many concurrent and related circumstances,"

---

[2] The majority consistently refers to the shape of whatever object Barney may have possessed as a "murder weapon." This characterization is not helpful to the discussion of the facts of this case, as no "murder" was either attempted or completed in this case.

*Moseley*, 293 Va. at 563, that lead to a conclusion that Barney did not possess a firearm beyond a reasonable doubt, and no rational fact finder could have so found.

ANALYSIS

I. Sufficiency of the Evidence

Code § 18.2-53.1 (Chapter 4: Crimes Against the Person, Article 4: Assaults and Bodily Woundings) criminalizes the "use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner," in the commission of certain enumerated felonies. *Id.* The statute does not define which objects constitute a firearm, thus requiring this Court to construe the term.[3] "[P]enal statutes must be strictly construed according to the rule of lenity and, if the language of the statute permits two reasonable but contradictory constructions, the statutory construction favorable to the accused should be applied." *Blake v. Commonwealth*, 288 Va. 375, 386 (2014) (internal quotation marks and citation omitted). However, this rule does not permit a defendant to benefit from an unreasonably restrictive interpretation of the statute. *Id.*

Our review is limited in that "[w]e can only administer the law as it is written." *Coalter v. Bargamin*, 99 Va. 65, 71 (1901). We may not extend the meaning of a statute "simply because it may seem to us that a similar policy applies, or upon the speculation that if the legislature had thought of it, very likely broader words would have been used." *Franklin & Pittsylvania Ry. Co. v. Shoemaker*, 156 Va. 619, 624 (1931) (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931)).

This Court has heeded this reminder in its numerous opportunities to address the question of what constitutes a firearm within the meaning of Code § 18.2-53.1. We have continuously

---

[3] I note that the Code of Virginia defines a handgun in Code § 18.2-307.1 (Crimes Involving Health and Safety) and a firearm in Code § 18.2-433.1 (Crimes Against Peace and Order). However, no such definition is provided in Code § 18.2-53.1.

held that a conviction for use of a firearm can be sustained where an individual either (1) possesses an operable firearm or (2) presents an object that appears to be an operable firearm. *See, e.g., Startin v. Commonwealth*, 281 Va. 374, 383 (2011) (the evidence was sufficient to support the defendant's conviction where he robbed a pharmacy by lifting his shirt and displaying a "John Wayne" replica handgun to a pharmacist); *see also Holloman v. Commonwealth*, 221 Va. 196, 199 (1980) (evidence was sufficient to support the defendant's conviction where he committed rape by using a spring-operated BB gun which looked like an automatic pistol).

This Court has also affirmed convictions where the direct evidence did not indicate that a defendant possessed a firearm, but the defendant informed the victim that he or she possessed a firearm, in conjunction with other circumstantial evidence, such as an object being held underneath clothing. *See, e.g., Powell v. Commonwealth*, 268 Va. 233, 237 (2004);[4] *see also Courtney v. Commonwealth*, 281 Va. 363, 368 (2011) (evidence was sufficient to support the defendant's conviction where he committed a robbery by holding an object underneath his shirt the entire time while stating to the victim, "I have a gun.").[5] This interpretation balances the statute's dual objectives of "prevent[ing] actual physical injury or death and . . . discourag[ing]

---

[4] In *Powell*, the defendant never removed his hand from his pocket throughout the lengthy encounter.

[5] *See also Jordan v. Commonwealth*, 60 Va. App. 675 (2012), *aff'd*, 286 Va. 153 (2013) (defendant pointed the instrument directly at the victim's head "and concurrently demanded that he part with possession of the vehicle"); *McBride v. Commonwealth*, 24 Va. App. 603, 607 (1997) (stating that "circumstantial evidence, such as an assailant's statement that he possesses a firearm, can be sufficient evidence to prove beyond a reasonable doubt that an accused indeed possessed a firearm"); *Elmore v. Commonwealth*, 22 Va. App. 424 (1996) (defendant's statement that he had a firearm was sufficient); *Byers v. Commonwealth*, 23 Va. App. 146 (1996) (defendant's assertion that "this is a stick up" when the victim felt a metal object on the back of his neck was sufficient circumstantial evidence to convict).

criminal conduct that produces fear of physical harm," while also adhering to its statutory language, which refers only to "any pistol, shotgun, rifle, or other firearm." *See Startin*, 56 Va. App. at 40-41; Code § 18.2-53.1.

Importantly, in *Powell* and related cases, the circumstantial evidence involved an inculpatory statement by the defendant to his victim in combination with the circumstantial evidence presented – in each instance the defendant kept an object concealed the entire time and explicitly stated that he possessed a firearm. Barney never affirmatively stated that she possessed a firearm. While her note was threatening and told Daugherty to remain silent if she wanted to live, the absence of an inculpatory statement is not merely a "feather-weight" distinction as the majority suggests. An affirmative inculpatory statement by a defendant that he or she possesses a firearm establishes an essential element of Code § 18.2-53.1. Without such an affirmative statement, to satisfy its burden of proof, the prosecution is required to present other evidence, which is sufficient to prove beyond a reasonable doubt, that a defendant did in fact possess a firearm.

The admission by a defendant that they have a gun is powerful evidence. However, the admission by a defendant is not necessary for a conviction. The Commonwealth can meet its burden by putting forth other evidence sufficient to prove a firearm's existence. The majority asserts that the admission by the defendant to an element of the crime is feather-weight evidence. Here, the feather is mighty when weighed against silence.

Keeping the above principles in mind, this Court has not hesitated to reverse convictions where the circumstantial evidence presented by the Commonwealth was insufficient to prove that a defendant possessed a firearm, even when a defendant made a threatening statement to a victim. For example, in *Yarborough v. Commonwealth*, this Court held that the evidence was

23

insufficient to support the defendant's conviction where he committed a robbery while keeping

his hands in his pockets, but had an object protruding from his right pants pocket which the

victim believed to be a gun. 247 Va. 215, 217-19 (1994). During the robbery, the defendant

stated, "[t]his is a stickup [sic]; give me all your money." *Id.*[6] When the defendant was arrested

fifteen minutes after the offense,[7] he possessed only a chilled beer can in his pocket. *Id.* We

reasoned that the "evidence that Yarborough 'may have had' a firearm in his possession creates

merely a suspicion of guilt." *Id.* at 218. We ruled that the evidence was insufficient to uphold

Yarborough's conviction despite his "stick up" threat to the victim, implying he possessed a

firearm.

The flaw in the majority's distinction between Barney's case and *Yarborough* is that the

majority opinion relies heavily on the aftermath of Yarborough's arrest, without consideration of

the other evidence in the case. In weighing the circumstantial evidence, the majority rightfully

states that the circumstances after the robbery matter. They do, but are not the circumstances

immediately *before and during* the robbery equally important? Surely, they are. Yet the

majority fails to properly consider them.

The evidence showed that Barney used her right hand to place the candy box and note

onto the counter. At this point in the video, her pocket is agape and there is no distinguishable

shape or bulge in her pocket. Barney then returns her empty right hand back in her pocket. It is

---

[6] A stick up is commonly defined as "to hold up (as at the point of a gun) in order to rob." Webster's Third New International Dictionary 2242 (2002).

[7] Yarborough was arrested in a densely populated city area after he fled from the scene using the subway (or Metro). The majority emphasized that the officers searched the small geographic area immediately after the incident took place – however, the metro system is an underground maze congested with bustling pedestrians, over-flowing trash cans which firearms can be tossed into, and numerous nooks and crannies available for hiding contraband. A fair factual inference is that Yarborough had an opportunity to dispose of a firearm, another similarity between Barney's case and *Yarborough* that the majority ignores.

24

then, and only then, that an amorphous bulge appears in Barney's right-hand sweatshirt pocket. The majority overly focuses on Barney's written words rather than the totality of her actions. "The ancient maxim, '[a]ctions speak louder than words,' has been so often applied in the determination of judicial questions as to become a canon of the law." *Jones v. Commonwealth,* 172 Va. 615, 620 (1939). I believe that an evidentiary piece of the puzzle is missed by choosing to weigh Barney's words as more compelling than the actions she took prior to the robbery. In order to place the note on the counter to threaten Daugherty, Barney removed her hand from her pocket, revealing an empty pocket showing no bulge. That emptiness speaks louder than Barney's words. More importantly, in this instance, Barney's words in no way help the Commonwealth in proving whether the object she possessed constituted a firearm.

I am mindful that in viewing the surveillance video of the robbery in this case, this Court does not "view video evidence [] to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have" found the essential elements of the crime proven beyond a reasonable doubt. *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022). Viewing the video of the robbery in this light, along with all the other evidence, no rational factfinder could have found the essential elements of Code § 18.2-53.1 to have been proven beyond a reasonable doubt.

Code § 18.2-53.1 necessarily requires that one possess a firearm in order to be able to use or attempt to use it. Barney never showed Daugherty an object that resembled an operable firearm, thus distinguishing the present case from the facts considered in *Holloman*, 221 Va. at 199, and *Startin*, 281 Va. at 282. The present case is also factually distinguishable from *Powell* and *Courtney*, where both defendants never removed their hands from their clothing while

25

making affirmative statements that they had guns[8] – statements[9] and actions Barney never made. *Id.* The majority reinforces its argument, supposedly concerning the sufficiency of the evidence presented by the Commonwealth, by relying on Barney's closing arguments for additional support, but closing arguments are never evidence, and such a reliance does not bolster the insufficient evidence presented.[10]

It is true, as the majority states, that Barney conceded before the Court of Appeals that "the victim in this case . . . had every belief that Ms. Barney had an object that was capable of expelling a projectile by force or gunpowder." CAV Writ Panel Oral Argument Audio at 3:02 to

---

[8] This dissent does not urge the creation of a rule which would require an affirmative statement confirming possession of a firearm to sustain a conviction under Code § 18.2-53.1, but rather urges the consideration of an affirmative statement of possession by the trier of fact when considering if an accused is guilty or not. Because the other circumstantial evidence presented in Barney's case is so scant, this dissent necessarily emphasizes the importance of an affirmative statement in order to sustain a conviction under Code § 18.2-53.1 related to the particular facts of this case. The consideration of an inculpatory statement by a defendant that they possess a firearm is powerful evidence for a trier of fact. After all, such a statement is an admission of guilt as to a crucial element to the crime. The difference between *Barney* and *Powell* provides an important distinction that the majority perhaps did not fully consider – in the absence of direct evidence of possession of a firearm by a defendant, an affirmative statement *can* make all the difference, it just is not *required* for a conviction under Code § 18.2-53.1.

[9] While she handed Daugherty a note that stated, "don't make a sound if you want to live," the note did not explicitly mention that Barney possessed a firearm or any other weapon. I, in no way, seek to diminish the trauma that Daugherty suffered by Barney's conduct that morning. While the note undoubtedly contained a threat of violence, it was not an affirmative statement that Barney indeed possessed a firearm.

[10] "[T]he purpose of closing argument is to draw the jury's attention to the body of evidence that has been admitted into the record and to argue reasonable inferences that may be drawn from that evidence." *Graham v. Cook*, 278 Va. 233, 249 (2009). However, closing argument is not a substitute for evidence, nor can it bolster insufficient evidence. *See* Kent Sinclair, The Law of Evidence in Virginia § 1-4[i], at 33 (8th ed. 2018) (stating that closing "arguments are not evidence"). The jury was instructed on this very issue. The court, just prior to closing arguments, admonished the jury as follows: "you will hear closing arguments very shortly from the attorneys. Those statements and the arguments are intended to help you in understanding the evidence and applying the law, *but they are not evidence in and of themselves.*" J. App. at 224 (emphasis added). The closing arguments are not relevant to the sufficiency of the evidence issue.

26

3:12 (May 18, 2021); *see supra at* 4-5. However, Daugherty's subjective belief that Barney possessed a gun is insufficient to sustain a conviction. *See Yarborough*, 247 Va. at 219 (the fact that the victim thought or perceived that the defendant had a firearm is not sufficient to support a conviction); *see also Byers v. Commonwealth*, 23 Va. App. 146, 150 (1996) (holding that "[p]ossession of a firearm is an essential element [under Code § 18.2-53.1], and the fact that a victim merely thinks or perceives that the accused was armed is insufficient to prove actual possession"). Daugherty affirmatively stated that she never saw a firearm throughout the encounter. Without more, the observations by the admittedly terrified witness who never actually saw a firearm are relevant but insufficient to prove, beyond a reasonable doubt, that Barney used a firearm.

Respecting the position that jury verdicts hold in our case law, viewing the facts before us in the light most favorable to the Commonwealth, I cannot say that any rational trier of fact could find beyond a reasonable doubt that the concealed object that Barney possessed was a firearm, as opposed to something that was merely shaped like a firearm, or nothing at all.

Jury verdicts are afforded a deferential standard of review due to the jury's "opportunity to observe the testimony and demeanor of all witnesses." *Lopez v. Commonwealth,* 73 Va. App. 70, 81 (2021). Here, the evidence presented at trial as to the existence of a firearm was limited and, while the jury was entitled to "the inferences to be drawn from proven facts," the Commonwealth never proved that Barney possessed a firearm, even circumstantially. *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998). "[A] factfinder cannot 'arbitrarily' choose, as between two equally plausible interpretations of a fact, one that incriminates the defendant."[11]

---

[11] The majority acknowledges that the evidence was such that the concealed object could have been a number of weapons other than a firearm. *See supra* at 14 (stating that Barney's

27

*Vasquez v. Commonwealth*, 291 Va. 242, 250 (2016) (quoting *Dixon v. Commonwealth*, 162 Va. 798, 803 (1934)). The choice becomes arbitrary "when no rational factfinder could believe the incriminating interpretation of the evidence and disbelieve the exculpatory one." *Id.* (citing *Williams v. Commonwealth*, 193 Va. 764, 772 (1952)). "The interpretation more favorable to the accused should be adopted unless it is untenable under all the facts and circumstances of the case." *Williams*, 193 Va. at 772. The interpretation of the evidence that Barney did not possess a firearm should have been adopted by the factfinder in this case, as it is not untenable under all the facts and circumstances presented to the jury.

The circumstantial evidence that Barney *may* have used a firearm during the robbery "creates merely a suspicion of guilt," and does not "establish guilt beyond a reasonable doubt and exclude every reasonable hypothesis of innocence." *Yarborough,* 247 Va. at 218-19; *Cameron v. Commonwealth*, 211 Va. 108, 110 (1970). The United States Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt of "*every fact necessary to constitute the crime* with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970) (emphasis added). "A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).

> Where the Commonwealth, in a criminal case, undertakes to prove the guilt of the accused by circumstantial evidence, as it did in the present case, not only must it prove the circumstances, but it must overcome the presumption of innocence and establish his guilt beyond a reasonable doubt. All necessary circumstances proved must be consistent with guilt and inconsistent with innocence. It is not sufficient that the evidence create a suspicion of guilt, however strong, or even a probability of guilt, but must exclude every reasonable hypothesis save that of guilt. To accomplish that the chain of circumstances must be unbroken and the evidence as a whole must be sufficient to satisfy the guarded judgment

counsel never argued that Barney had a different weapon in her pocket, "such as a knife, a set of brass knuckles, or some melee weapon").

28

> that both the *corpus delicti* and the criminal agency of the accused have been proved to the exclusion of any other reasonable hypothesis and to a moral certainty.

*Webb v. Commonwealth*, 204 Va. 24, 34 (1963). Indeed, in this case, the evidence adduced does not satisfy this burden.

## II.    Jury Instructions

Because I would hold that the evidence was insufficient to sustain Barney's conviction, I would decline to rule on the assignments of error relating to the jury instructions, as our decision should be based on the best and narrowest ground possible. *McGhee v. Commonwealth*, 280 Va. 620, 626, n.4 (2010) (citing *Air Courier Conference v. American Postal Workers Union*, 498 U.S. 517, 531 (1991) (Stevens, J., concurring) (faithful adherence to the doctrine of judicial restraint warrants decision of cases "on the best and narrowest ground available")). Here, that ground is to affirm the Court of Appeals' decision reversing Barney's conviction and dismissing the indictment because the evidence was insufficient as a matter of law to sustain her conviction. In so holding, I would vacate the portion of the Court of Appeals' opinion which relates to jury instructions.

## CONCLUSION

For the reasons stated above, the evidence was insufficient to sustain Barney's conviction. As a result, I would affirm the Court of Appeals as to this point alone, and thus, respectfully dissent.